UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE BLACK & DECKER CORPORATION, )<br>BLACK & DECKER, INC., BLACK & DECKER )<br>(U.S.) INC., EMHART CORPORATION, and )<br>EMHART INDUSTRIES, INC., )<br>)<br>Defendants. )<br>) | CIVIL ACTION<br>NO. 1:04-CV-10654-DPW<br>NO. 1:04-CV-10659-DPW<br>NO. 1:04-CV-10662-DPW |

DESCRIPTION OF POSTURE OF BROS,
HUTH AND BERKS/DOUGLASSVILLE
<u>CLAIMS WITH FURTHER AUTHORITY</u>

May 17, 2004

Jack R. Pirozzolo BBO# 400400
Richard L. Binder BBO# 043240
Judith S. Ziss BBO# 544937
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

This memorandum, filed pursuant to the Joint Status Report of April 5, 2004, summarizes the most pertinent facts and legal issues, and collects prior briefing, pertaining to the BROS, Huth, and Berks/Douglassville ("Berks") claims.[1] It also addresses certain issues raised during the August 2003 hearing. These are the applicability of the 1970-73 umbrella policy, the meaning of "operations" in the pollution exclusion deletion, the availability of extrinsic evidence regarding the duty to defend, and, very briefly, the meaning of "accident" in Maryland. The meaning of "accident" and the 1970-73 umbrella policy also are addressed in Black & Decker's post-argument briefs (Alcolac Mem., Umbrella Mem., and Supp. Umbrella Submission). In addition, Black & Decker supplements previous briefing with a few new cases confirming principles of Maryland law. A factual update, reporting the successful defense of the underlying Huth claim and the amount of defense costs at the three sites, is set forth in Section B, infra. The transcript of the hearing and the post-hearing Black & Decker memoranda are attached. Pursuant to the Joint Status Report, Black & Decker also is filing a compilation of previous briefs and submissions pertaining to these sites ("Compilation").[2]

---

[1] References are to three memoranda (contained in Volume 5 of the Compendium filed on September 27, 2002), the transcript of the August 27, 2003 hearing, and three memoranda filed subsequent to the hearing:
   1. Further Memorandum in Support of Black & Decker Motion for Summary Judgment with Respect to Black & Decker Sites (BROS, Douglassville and Huth), filed on November 13, 1998 ("Further Mem.");
   2. Black & Decker's Reply Memorandum Regarding Maryland and Connecticut Sites, filed on December 4, 1998 ("Reply Mem."),
   3. Black & Decker's Supplemental Submission Regarding December 8, 1998 Hearing, filed on December 9, 1998 ("Supp. Submission");
   4. Transcript of the hearing of August 27, 2003 ("Tr.");
   5. Memorandum Regarding Liberty Mutual's Miscitation and Misapplication of Alcolac in Connection with BROS Site, filed on September 12, 2003 ("Alcolac Mem.");
   6. Memorandum Regarding Duty to Defend Under 1970-1973 Umbrella Excess Policy, filed on September 12, 2003 ("Umbrella Mem."); and
   7. Supplemental Submission in Response to Supplemental Brief of Liberty Mutual Regarding Duty to Defend BROS Claim Under Liberty Mutual's Excess Umbrella Policy, filed on September 17, 2003 ("Supp. Umbrella Submission").

There also are references to this Court's Draft Memorandum and Order of May 17, 2002 ("May Draft Order") and this Court's Memorandum and Order of December 5, 2003 ("December Order").

[2] The first volume of the Compilation contains the memoranda and transcript mentioned in note 1; the second volume contains the appendix to the November and December 1998 filing concerning the Maryland sites.

A.  Relevant Policies

The record includes CGL policies issued by Liberty Mutual to Black & Decker for July 1, 1970 through July 1, 1979 and EL policies for July 1, 1970 through July 1, 1978.  See May Draft Order at 93-94.  The 1970-71 CGL policy has no pollution exclusion.  The EL policy for the three year period, 1970-73, has no pollution exclusion and is an umbrella policy which would "drop down" if the underlying policies for 1971-1973 did not provide coverage due to a pollution exclusion.  See Umbrella Mem. and Supp. Umbrella Submission.  Black & Decker relies on secondary evidence, including certificates of insurance, of the CGL policies for the 1937-1970 period and the EL policy for the 1967-70 period.  See Further Mem. at 2-3.  The Court has tentatively concluded that, for post-1940 policies ("Lost Policies"), fact issues remain. See May Draft Order at 93-98.

B.  Summary: The Sites And The Issues

BROS in New Jersey, Huth in Ohio, and Berks in Pennsylvania are Superfund sites at former waste oil processing facilities.  At each, the linkage between Black & Decker waste oil and the facility was tenuous at best.  Black & Decker successfully defended each claim and seeks reimbursement of its defense costs from Liberty Mutual.[3]  Defense costs, before interest, are $441,785.15 for BROS, $14,272.31, for Berks, and $151,598.62 for Huth.[4]  This Court has determined that Maryland law applies.  See May Draft Order at 59-61.

Black & Decker was a party to CERCLA litigation at Berks and Huth.  At BROS, where two CERCLA actions were pending, the Court, to avoid formal third-party practice,

---

[3]  Black & Decker made a de minimis payment of $5,000 to settle Huth.  The settlement agreement was produced.

[4]  With interest calculated at 12% through May 15, 2004, defense costs plus interest are $938,410.76 for BROS, $33,286.61 for Berks, and $276,305.32 for Huth.

ordered the parties to identify potentially responsible parties ("PRPs") and transmit letters to them, "inviting participation in the BROS Site Settlement Protocol Process in lieu of joinder as a defendant." The Court also ordered that certain information concerning alleged nexus to the site be provided to the PRPs, set up a formal settlement process, which included discovery as well as mediation, and ruled that the participating PRPs would be "bound by" orders of the Court. Black & Decker was so identified, received the letter and materials, and participated in the process. A fuller fact description is in Further Mem. at 3-7. As summarized below, Black & Decker has shown that this Court-ordered process was the functional equivalent of a "suit."

For BROS and Berks, a cluster of issues arises in connection with the pollution exclusion. See Further Mem. at 45-46. The complaining documents, alone and as supported by extrinsic evidence, allege facts from which a jury could find an "occurrence" which would come within policies not containing pollution exclusions (the Lost Policies, the 1970-71 CGL policy and the 1970-73 umbrella policy), and, also, within policies including pollution exclusions. Black & Decker's argument, showing that Liberty Mutual has a duty to defend under policies with and without pollution exclusions, is summarized below. Liberty Mutual does not appear to rely on the pollution exclusion with respect to Huth, and such an argument would have no support. Liberty Mutual also has relied on other arguments, which, as Black & Decker has shown, are baseless.

      C.     <u>Suit</u>

The court-mandated proceedings in BROS were the functional equivalent of a suit, as judged by the principles set down in <u>Hazen Paper Co. v. U.S. Fidelity and Guar. Co.</u>, 555

N.E.2d 576 (Mass. 1990).  See December Order at 6-8.[5]  First, a failure to comply would have "alter[ed]" Black & Decker's potential liability since, absent participation, it would have lost the opportunity to enter into a judicially approved settlement, insulating it from contribution actions by other PRPs and from a subsequent EPA proceeding.  See Supp. Submission at 1-3 and Exhibits.  It would also have lost the ability to challenge the evidence in that proceeding of its alleged nexus to the site.  Participation enabled Black & Decker to evaluate the case against it and make a reasoned, and reasonable, decision to withdraw in the face of an inordinately high settlement demand.  Second, the letter was, in essence, a PRP letter issued by judicial authority.  Mr. Hyatt implemented the court order that he carry out the ministerial function of sending the letter to those identified as PRPs during the litigation (App. XXVIII:029).  Third, the polite "tone" of an "invitation" was more than counterbalanced by the "invitation" being "in lieu of joinder" in the already-pending CERCLA actions.  The document "display[ed] a certain level of coercion" sufficient to satisfy the Hazen test.  See December Order at 21.  See also Further Mem. at 19-29, Reply at 1, and Supp. Submission.

      D.      The Pollution Exclusion Cluster

In Maryland, an insurer must defend all claims which are potentially covered, including those where the allegations do not "clearly bring the claim within or without" the policy.  Brohawn v. Transamerica Ins. Co., 347 A.2d 842, 850 (Md. 1975).  "'If there is a possibility, even a remote one,'" that the underlying claims are covered, the insurer must defend.  Utica Mut. Ins. Co. v. Miller, 746 A.2d 935, 942 (Md. App.), cert. denied, 753 A.2d 3 (Md.

---

[5]  These are the principles the Court should apply.  While Maryland's highest court has not decided the "suit" issue, a lower court adopted this standard.  See Bausch & Lomb Inc. v. Utica Mut. Ins. Co., 625 A.2d 1021, 1028 (Md. 1993). Notably, in Johnson Controls, Inc. v. Employers Ins. of Wausau, 665 N.W.2d 257, 281-85 (Wis. 2003), cert. denied, 2004 WL 3355111, ___ S. Ct. ___ (2004), Wisconsin's highest court adopted the Hazen approach, abrogating its earlier, narrow construction of "suit."  See also Further Mem. at 23-25.

2000). Where there is a potentiality of coverage of any part of a claim, the whole claim must be defended. Hartford Cas. Ins. Co. v. Chase Title, Inc., 247 F.Supp. 2d 779, 782-83 (D.Md. 2003). See also Further Mem. at 29-30.

      Liberty Mutual cannot rely upon the pollution exclusion to shield it from the duty to defend. The 1970-71 CGL policy, the 1970-73 umbrella policy and the Lost Policies were all implicated. Also, due to evidence of sudden and accidental events at the sites, as well as the pollution exclusion deletion, there is a duty to defend under policies with pollution exclusions.

      1.    Policies Without Pollution Exclusions Are Implicated At Each Site

         a.    BROS

      The complaining documents required participants to address transactions from 1958 through 1981, which includes the terms of the 1970-71 policy and the Lost Policies. Extrinsic evidence potentially links the transporter, A&A, to BROS in 1959-61, 1965-67, and, generally, the 1960's and potentially links Black & Decker to A&A as early as 1968, confirming that the 1970-71 policy, in effect while contamination continued, was triggered.[6] For a fuller discussion, see Further Mem. at 8-11, 31-37. The three-year term of the umbrella policy continues until July 1973, after the March 1973 date on an A&A pick-up log upon which Liberty Mutual erroneously relies to limit the period triggered by the complaining documents (App. XXIX:27, 65). Further, as to each site, there were occurrences prior to the alleged Black & Decker nexus, thus triggering the pre-1970 policies. Maryland would follow the rule that "the policies extend to occurrences during the policy but before the insured was involved with the site" (December Order at 69).

---

[6]   Maryland's trigger is identical to that in Massachusetts. See Tufts Univ. v. Commercial Union Ins. Co., 616 N.E.2d 68, 75 (Mass. 1993), relying on Harford County v. Harford Mut. Ins. Co., 610 A.2d 286 (Md. 1992). Both clearly trigger policies when exposure and/or injury from prior releases continue into the policy period.

### b. Berks/Douglassville

The complaint alleged site operations during 1941-85, which includes the terms of the Lost Policies and the 1970-71 policy. Extrinsic evidence potentially links A&A to Berks beginning at least as early as 1968 and, as set forth above, potentially links Black & Decker to A&A beginning the same year, again triggering the 1970-71 policy and the earlier policies. Black & Decker was subsequently dismissed as a party due to lack of evidence linking it to the site. It was entitled to a defense of this groundless lawsuit. For fuller discussion, see Further Mem. at 11-14, 31-37. As with BROS, the March 1973 pick-up log, upon which Liberty Mutual apparently relies, is squarely within the term of the 1970-73 umbrella policy.

### c. Huth

The complaint alleged site operations in the 1938-1990 period, which includes the terms of the Lost Policies and the 1970-71 policy. Extrinsic evidence is sketchy and contradictory. The only documentary evidence is a ledger page allegedly reflecting a transaction between Black & Decker and Huth on January 20, 1970, which also is within the 1970-71 policy period. Black & Decker settled this claim for $5,000, a nuisance value settlement of a groundless claim. For a fuller discussion, see Further Mem. at 14-16, 31-37 and Reply at 4.

### d. Liberty Mutual Cannot Rely Upon Extrinsic Evidence

Liberty Mutual seeks to escape its duty by relying upon extrinsic evidence. An insured can rely upon such evidence to establish "a potentiality of coverage." Aetna Cas. & Sur. Co. v. Cochran, 651 A.2d 859, 863-866 (Md. 1995). During argument, Liberty Mutual cited Universal Underwriters Ins. Co. v. Lowe, 761 A.2d 997 (Md. App. 2000), in a misguided attempt to show that an insurer can do the same. It apparently seeks to offer extrinsic evidence of alleged

1973 deposits as somehow negating the possibility of prior deliveries of Black & Decker waste oil to BROS or Berks. For a fuller discussion, see Further Mem. at 29-30 and Reply at 1-3.

Lowe is inapposite. There, the car in question was owned and insured by an automobile dealership, it was provided to the former owner of the dealership, and only the former owner and his wife were authorized to use it. When their daughter was in an accident, the insurer declined coverage because only drivers authorized by the dealership were covered. Summary judgment entered for the insurer based upon the unrebutted affidavit of the dealership's representative that he did not give the daughter permission and, accordingly, that the driver was not an insured. See 761 A.2d at 1008 & n.13. In the present case, Black & Decker is the named insured; Liberty Mutual seeks to use extrinsic evidence to deny coverage to an insured. Further, the inference it seeks to draw is rebutted by Black & Decker's showing of potentially earlier releases.

Liberty Mutual also relied upon Northern Ins. Co. v. Baltimore Business Communications, Inc., 68 Fed. Appx. 414 (4th Cir. 2003), where the insurer sought to rely upon extrinsic evidence. The court pointed to the "general rule … that the 'insurer may not introduce extrinsic evidence that would take the claim outside the policy's coverage.'" Id. at 418. While it recognized "two limited exceptions," neither applied in Northern and neither applies here. First, an insurer may rely upon an amendment to the underlying complaint, an exception that Liberty Mutual acknowledged "doesn't apply here." Tr. at 17. Second, "an insurer may utilize uncontroverted extrinsic evidence from the underlying lawsuit if such evidence clearly establishes that the suit's allegations are beyond the scope of coverage." Here, where any evidence in the underlying case was fuzzy at best, and no evidence was uncontroverted, that exception also is inapplicable.

Maryland "prevents an insured from being forced to take a position adverse to its own interests, i.e., that it is liable to the tort plaintiff in the underlying action." 68 Fed. Appx. at 418, n.6. It does so by "preclud[ing] the insurer from circumventing the potentiality rule by attempting to litigate the merits of an underlying lawsuit in the coverage action." Id. at 418. Liberty Mutual insists that, to obtain coverage, Black & Decker was compelled to concede in the underlying proceedings that its waste oil was delivered to the contaminated disposal sites and indeed, that the waste oil arrived at the sites even earlier than the purported evidence showed. Such a requirement flies in the face of the basic precepts underlying Maryland coverage law.

At each of the sites, the "potentiality" of coverage, coupled with a "denial" of wrongdoing, results in a "classic duty to defend." See Tr. at 35.

### 2. Policies With Pollution Exclusions Provide Coverage

#### a. Sudden and Accidental Events

Black & Decker is entitled to a defense under policies which include pollution exclusions because, at each site, there were events which are sudden and accidental. The underlying complaint in BROS alleged a 1964 fire. There is extrinsic evidence of a 59,000 gallon leak of hazardous substances in 1971. Berks was inundated by two catastrophic floods, beginning in 1970. Huth suffered a fire from a lightening strike in 1953, leading to a 75,000 gallon spill. See Further Mem. at 8-9, 13, 15, 37-38. Under CERCLA strict liability, Black & Decker was potentially liable for damage from these events regardless of when its waste allegedly reached the site. See Highlands Ins. Co. v. Aerovox Inc., 676 N.E.2d 801, 806 (Mass. 1997). A complete defense was required. As this Court stated, "once the duty to defend is triggered and its scope has been determined from the charging document, it includes defense as to damage or incidents that are within the scope of the charging document's demands even if that

damage is not otherwise covered under the policy." December Order at 26. This is consistent with Maryland law, where a complete defense is required so long as there is a potentiality of coverage of at least one of the underlying claims. Chase Title, 247 F. Supp. 2d at 782-83.

    b.  Operations And The Pollution Exclusion Deletion

In any event, the pollution exclusion deletion applies to "operations or occurrences in … Maryland." Maryland has defined "operations" broadly, to mean "'the whole process of planning for and operating a business or other organized unit.'" Liller v. Logsdon, 275 A.2d 469 (Md. 1971). In Reply Mem. at 3, Black & Decker cited Nat'l Union Fire Ins. Co. v. CSX Corp., 982 F. Supp. 1050, 1051-52 (D. Md.), vacated on other grounds, 155 F.3d 560 (table) (4th Cir. 1997), to show the word "operations" is ambiguous under Maryland law, a conclusion consistent with an earlier decision of the Fourth Circuit in the same case. See 131 F.3d 135 (table), 1997 WL 770608 (4th Cir. 1997). In CSX, the insured loaded a freight car and the issue was whether a freight car load that came loose, rotated, and hit a passenger train came within an exclusion of claims "involving the operation and maintenance of a railroad." The Fourth Circuit held that the focus should have been, not on whether a railroad was involved, but, rather, on the nature of "the alleged wrongdoing of the insured." 1997 WL 770608 at *3. As it explained, "National Union may deny coverage in this case only if [the insured] was involved in the operation of a railroad when it engaged in the acts and omissions that allegedly caused the wreck." Id. During argument on August 27, 2003, an issue arose as to whether the Black & Decker "operations" which allegedly resulted in contamination in New Jersey at BROS and in Pennsylvania at Berks were "operations" in Maryland because the Maryland waste oil was deposited out of state. Tr. at 8. However, under the Fourth Circuit's reasoning as applied to the present facts, the focus should be on the locus of actions of the insured, which led to its strict

-9-

liability under CERCLA, rather than on out-of-state actions by third parties. Black & Decker, acting in Maryland, entrusted its Maryland-generated waste oil to A&A. Under that reasoning, the relevant "operations" were in Maryland. At the very least, there is a fact question for the jury. For additional discussion, see Further Mem. at 38-46 and Reply at 3-4.

### E. Other Issues

Liberty Mutual's argument that there was no "accident" or "occurrence" is erroneous. See Alcolac Mem. At most, Black & Decker had its waste oil picked up for recycling, an environmentally responsible thing to do. Maryland views gradual contamination as an "accident" (see Tr. at 43-47). Harford, 610 A.2d at 291-95; Icarom, PLC v. Howard County, 981 F. Supp. 379, 388-90 (D. Md. 1997), aff'd, 1999 WL 222368 (4th Cir. 1999) (both dealing with coverage at landfills, utilizing "occurrence" or "accident" analysis).

Under Maryland law Black & Decker is entitled to pre-notice attorney's fees. See Further Mem. at 46-48 and Reply at 4. Regarding Huth, the Liberty Mutual groundless arguments of lack of cooperation and lack of "property damage" at a contaminated site, are addressed in Further Mem. at 46-48 and Reply at 4. Liberty Mutual cannot rely upon "[m]ere speculation and hypothesis" to prove prejudice. Miller, 746 A.2d at 946.

Respectfully submitted,

/s/ Jack R. Pirozzolo
Jack R. Pirozzolo BBO# 400400
jpirozzolo@wpmlaw.com
Richard L. Binder BBO# 043240
Judith S. Ziss BBO # 544937
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

-10-