# Tab 2.

# HUTH OIL SERVICES SITE

## Entities and Time Period

- The Huth oil reclamation facility in Cleveland, Ohio allegedly received waste oil from some unidentified Black &Decker facility at some point in or about 1970.

## Policies

- The Black & Decker line of policies for the 1970 period.
- No Black & Decker policies implicated prior to 1970 as no evidence of any alleged connection between Black & Decker and Huth prior to 1970.

## Applicable Law

- According to the Court's Order of October 30, 1998 and its May 17, 2002 Memorandum and Order, Maryland law applies to the Black & Decker policies.

## Undisputed Material Facts

- Black & Decker notified by letter dated April 6, 1994 of potential contribution claim by PRP group members.
- Black & Decker named as defendant in lawsuit on August 4, 1994.
- When Black & Decker notified Liberty Mutual of claim, it did not include correspondence regarding potential settlement opportunity.

## No Coverage, As A Matter of Law

1. No occurrence, no accident, under policy pursuant to Maryland law.
2. Black & Decker's failure to cooperate, in affirmatively hiding settlement opportunity, precludes coverage.

## References for this site:

1. Exhibits to Liberty Mutual's Motion and Supporting Memorandum for Summary Judgment – Binder 2A(Black & Decker Policies)
2. Exhibits to Liberty Mutual's Motion and Supporting Memorandum for Summary Judgment – Binder 7 (Pleadings and related Documents))
3. Exhibits to Liberty Mutual's Motion and Supporting Memorandum for Summary Judgment – Binder 12 (Secondary Evidence)

4. Exhibits to Liberty Mutual's Motion and Supporting Memorandum for Summary Judgment – Binder 26 Tier II Sites)

5. Exhibits to Liberty Mutual's Opposition to Defendant's Motion for Partial Summary Judgment – Binder 28 (Supporting Documentation)

6. Exhibits to Liberty Mutual's Supplemental Submission in support of its Motion for Summary Judgment with respect to BROS, Berks Landfill, Huth Oil and Ansonia/Derby Sites – Binder 30 (Supporting Documentation)

7. Appendix to Black & Decker's Motion for Summary Judgment – App. XXXIII (Huth Documents).

# 1929619 v1

# Tab 3.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> THE BLACK & DECKER CORPORATION, BLACK & DECKER INC., BLACK & DECKER (U.S.) INC., EMHART CORPORATION, and EMHART INDUSTRIES, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

C.A. No. 96-10804-DPW

------------------------------------------------------------------

## MOTION AND SUPPORTING MEMORANDUM OF LIBERTY MUTUAL <u>INSURANCE COMPANY FOR SUMMARY JUDGMENT</u>

------------------------------------------------------------------

Ralph T. Lepore, III, Esq.
Robert A. Whitney, Esq.
Kenneth R. Brown, Esq.
Warner & Stackpole LLP
75 State Street
Boston, MA 02109
(617) 951-9000

"accidental" within the meaning of the sudden and accidental exception to the pollution exclusion. See SCA Services, 412 Mass. at 336-338.

Moreover, the Jadco-Hughes facility was a "pollution prone" operation. As such, any individuals spills or releases which the Defendants might attempt to point to as having been "sudden" in nature cannot change the conclusion that, on the whole, pollution at the facility was caused as a result of its routine business operations and therefore with the exception to the pollution exclusion clause does not apply.

**H.    The Huth Oil Services Site, Cleveland, Ohio**

**1.    Factual Background And Allegations Of Contamination At The Site**

The Huth Oil Services Site is a waste oil reclamation facility and is operated by the Huth Oil Service Company ("Huth Oil") in Cleveland, Cuyahoga County, Ohio. By letter dated April 6, 1994, Huth Oil PRP Group made up of Huth Oil Services Company, Ashland Chemical Company, General Electric Company and Cleveland Electric Illuminating Company, requested that Black & Decker voluntarily participate with the Group in investigating the site, and requested that Black & Decker pay towards the cost of alleged remediation of activities at the site. See Letter from D. Dumas of Thomas, Mine & Flory, counsel to the Huth Oil PRP Group to H. Rodgville, Black & Decker, dated April 6, 1994 (Binder 26, at Tab H-1). The letter indicated that if Black & Decker chose not to pay the requested amount it would be joined in a suit. Black & Decker has alleged that it received an apparent "receipt and ledger sheet" from Huth Oil that indicated that an unknown Black & Decker facility paid Huth Oil $300 on January 20, 1970 for unknown services;  Black & Decker however, denies ever shipping any oil wastes to the Huth Oil

236

Services Site. Defendants' Statement Pursuant to Order of July 29, 1996 at 38 (Binder 7, at Tab 4.); Defendants' Int. Responses, Tier II Appendix, at 52 (Binder 8, at Tab 1).

On or about August 4, 1994, the action of <u>Centerior Services Co., et al. v. Allied-Signal, et al.</u>, Case No. 1:94CV 1590 (N.D. Ohio) against Black & Decker among others was filed. On October 7, 1994, Black & Decker filed a motion to dismiss in the <u>Centerior</u> litigation. Black & Decker then filed a motion for summary judgment, which is still pending. Defendants' Int. Responses, Tier II Appendix, at 57 (Binder 8, at Tab 1).

   **2.    There Is No Coverage Under The Black & Decker Policies With Respect To Any Alleged Property Damages At The Site**

The demand made upon Black & Decker by the Huth Oil PRP Group, specifically referenced a purported shipment of waste oil from an unknown Black & Decker facility in 1970. No other demand against Black & Decker with respect to any shipments of waste oil from any of its facilities is set forth in the April 6, 1994 letter. After Black & Decker failed to pay the requested amount of $50,000 to the Huth Oil PRP Group, Black & Decker was joined as a defendant in the <u>Centerior Service Company</u> action. In that complaint against Black & Decker in the action, no other purported shipments of materials are identified as having been sent to the Huth Oil facility, and Black & Decker is described only as a purported "generator." Therefore, the demand against Black & Decker, as set forth in the complaint, is limited to allegations of property damage resulting from a single shipment alleged to have come from a Black & Decker facility in 1970.

All Black & Decker policies from July 1, 1971 and forward, contain the standard pollution exclusion clause with the "sudden and accidental" exception. As such, there can be no coverage under these policies because the pollution at issue at the site which resulted in property

damage was neither "sudden" nor "accidental."  See SCA Services, 412 Mass. at 336-338;

Employer's Insurance of Wausau, 41 Mass. App. Ct., at 724.

The only evidence of any "releases" of contamination at the site was that oil which had

accumulated in the dike adjacent to several of the above ground oil storage tanks was

contaminated by PCBs.  See U.S. EPA Administrative Order pursuant to CERCLA dated

October 5, 1990 (Binder 26 at Tab H-2).  There are no allegations nor any documented evidence,

however, of any non-routine, sudden and accidental releases which would have resulted in this

contamination.  As such, the discharge of pollutants at the facility must be deemed to have been

part of the facility's routine and deliberate business activities.  Accordingly those discharges at

the site were not "accidental" within the meaning of the "sudden and accidental" exception to the

pollution exclusion.  See SCA Services, 412 Mass. at 336-338.

## I.    The Jaffrey Landfill Site, Jaffrey, New Hampshire

### 1.    Factual Background And Allegations Of Contamination At The Site

The W.W. Cross Division of PCI and other PCI assets were sold to a newly organized

PCI Group, Inc. (DE) ("New PCI Group") by agreement dated December 17, 1987.  The

Defendants have alleged that on June 18, 1991, the new PCI Group sold the assets of the W.W.

Cross Division to D.D. Bean and Sons Co. ("Bean"), who incorporated W.W. Cross, Inc., as a

wholly-owned subsidiary (the "New W.W. Cross").  Defendants' Int. Responses, Tier II

Appendix, at 31 (Binder 8, at Tab 1).  The original W.W. Cross facility located in Jaffrey

manufactured tacks, nails and staples purportedly beginning in approximately 1918.  Id.

## IX.    CONCLUSION

For the reasons stated above, Liberty Mutual requests that the Court grant its motion for summary judgment in its favor with respect to its Complaint and the Defendants' Counterclaim.

### REQUEST FOR ORAL ARGUMENT

**LIBERTY MUTUAL INSURANCE COMPANY**

By its attorneys,

Ralph T. Lepore, III (BBO #294420)
Robert A. Whitney (BBO #545675)
Kenneth R. Brown (BBO #557052)
WARNER & STACKPOLE LLP
75 State Street
Boston, MA 02109
(617) 951-9000

DATED: February 9, 1998

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the Defendants' counsel, Attorney Jack Pirozzolo, Willcox, Pirozzolo & McCarthy, 50 Federal Street, Boston, MA 02110, by hand.

Kenneth R. Brown

February 9, 1998

# Tab 4.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE BLACK & DECKER CORPORATION, )<br>BLACK & DECKER INC., )<br>BLACK & DECKER (U.S.) INC., )<br>EMHART CORPORATION and )<br>EMHART, INC., )<br>)<br>Defendants. )<br>) | CIVIL ACTION<br>NO. 96-10804-DPW |

MEMORANDUM OF BLACK & DECKER
IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGEMENT

February 9, 1998

Jack R. Pirozzolo, BBO# 400400
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Attorney for Defendants

PROTECTED INFORMATION

By Order of Court, this
envelope is to remain sealed
and the Clerk of this Court
shall not reveal the contents
thereof to any person other
than the Court or attorneys of
record for the parties until
further order of this Court.

or onto the surrounding ground (App. XXXII:098-099).  Six
to eight million tons of sludge were released by Hurricane
Agnes (App. XXXII:007).  In 1983, the site was placed on
the EPA's National Priority List (App. XXXII:009)

     5.   <u>Liberty Mutual Was Required To Defend</u>

     As with BROS, there is no reason for Liberty
Mutual to have refused to defend this claim.  The
allegations in the underlying complaint were sufficient to
mandate a defense.  As the extrinsic evidence shows, with
respect to Douglassville, the "potentiality" of a "sudden
and accidental" event is more than theoretical.  The site
was ravaged by two catastrophic floods.  Under any
construction the "sudden and accidental" exception to the
pollution exclusion would apply.

     C.   <u>Huth</u>

     1.   <u>The Underlying Claim</u>

     This claim relates to the Huth waste oil
reclamation facility in Cleveland, Ohio, a site in
operation from 1938 through 1990.  Several PRPs who
remediated the site commenced a cost recovery action,
<u>Centerior Service Co</u>. <u>et al</u>. v. <u>Allied-Signal Inc</u>. <u>et al</u>.,
Civil Action No. 1:94 CV 1590 (consolidated as 1:94 CV
1588) ("Centerior"), filed on August 4, 1994, in the United
States District Court for the Northern District of Ohio

against Black & Decker and other defendants (App.
XXXIII:001-005).  They sought to recover their remediation
costs pursuant to CERCLA.

In the complaint, the plaintiffs alleged that a
waste oil reclamation facility was operated at the Huth
site between 1938 and 1990 (App. XXXIII:003).  All
allegations relating to the defendants are set forth in the
most general terms, with no suggestion of the nature of
their involvement or the timing thereof.

The plaintiffs' claims are extremely vague even
by modern pleadings standards.  The complaint contained no
allegations concerning the nexus between Black & Decker and
the site or the years in which Black & Decker's waste was
allegedly shipped to the site.  Plaintiffs did not even
identify the Black & Decker facility whose waste was
allegedly shipped to Huth.  One count has been dismissed
and is presently on interlocutory appeal.  An additional
count remains pending.  See, Hwang Affidavit.

Black & Decker provided Liberty Mutual notice of
the claim in a letter from Michael Margiotta dated August
16, 1994 (App. XXXIII:226-237).  Liberty Mutual denied
coverage in a letter from Kim Olson to Michael Margiotta
dated November 6, 1995 (App. XXXIII:261-267).  The bases
for denial, as set forth in Liberty Mutual's Statement to

164

this Court, include the same litany of excuses as Liberty
Mutual has employed with respect to most of the sites.  As
shown, the complaint alleges that the site was in operation
beginning in 1938, long before the pollution exclusion was
added to the standard policies.  A defense by Liberty
Mutual was required.

     2.   <u>Evidence Relating to Black & Decker</u>

     A review of available extrinsic evidence further
establishes Liberty Mutual's obligation to defend.  The
factual basis for the allegations in the underlying
complaint emerged when plaintiffs opposed the Black &
Decker summary judgment motion.  The opposition was largely
predicated on notes concerning interviews with drivers who
allegedly transported waste from Black & Decker to Huth
(App. XXXIII:063, 006-075, particularly at 012, 015-019).
The only site tentatively identified by one of plaintiffs'
witnesses was located in Canton, Ohio (App. XXXIII:036,
040).  That plant ceased operations in the 1940's.

     Even the evidence that the plaintiffs offered in
support of their allegations indicates that the allegations
are based on the assumption that Black & Decker's waste
reached the site prior to the advent of the pollution
exclusion.  This includes: 1) the alleged statement of a
driver, John Ockenga, who was allegedly employed by Huth

only during the period 1949-1968 (App. XXXIII:042-043, 045); 2) the alleged statement of Carl Stutzman, a driver employed by Huth during 1946-1988, that he picked up oil from Black & Decker over a 15-20 year period (App. XXXIII:039-040), although Mr. Stutzman at his deposition denied having any such knowledge (App. XXXIII:067, 070-072); and 3) a ledger page allegedly reflecting a transaction between Black & Decker and Huth Oil on January 20, 1970 (App. XXXIII:073).

>    3.  <u>Site History</u>

>    Extrinsic evidence regarding the site also confirms that it was in operation from the middle of the century onward, <u>i.e.</u>, 1938 through 1990 (App. XXXIII:003). Huth collected waste oil from various manufacturing companies and brought it to the site for reclamation. There is also evidence of a sudden and accidental event at the site.  The deposition of Richard Stutzman, attached to the opposition to Black & Decker's summary judgment motion, states that there was a spill of approximately 75,000 gallons of oil at the site in 1953 (App. XXXIII:075, 078-079).  The spill occurred due to a fire that started when lightning struck an oil tank (<u>Id</u>. at 078).

4.    <u>Liberty Mutual Was Required to Defend</u>

As with the other sites, the allegations in the underlying complaint were sufficient to compel a defense. Moreover, Black & Decker has defended the underlying action on the ground that none of its waste reached the site. Certainly, when an insured defends an underlying claim on the ground that it did <u>not</u> engage in the complained of action, the insured is not compelled to establish the time period during which it did <u>not</u> act in order to determine the applicability of a policy exclusion.  <u>See</u>, <u>Litz</u>, <u>supra</u>.

D.    Liberty Mutual Had No Lawful Reason To <u>Avoid Defense Costs or Indemnification</u>

The Black & Decker sites are so clearly covered that there can be no good faith in Liberty Mutual's coverage position.  It drives home the Liberty Mutual strategy of requiring expensive litigation to obtain that which, on the pleadings alone, the insured rightly deserves.  Black & Decker's entitlement to coverage has been buttressed by facts which have been discovered as a result of expensive investigatory discovery.  Liberty Mutual's contentions should be rejected as dishonest.

IX.    <u>MASSACHUSETTS AND MASSACHUSETTS-RELATED SITES</u>

The Massachusetts claims arise out of contamination of old industrial sites which were in operation for many years prior to the pollution exclusion

seeks rulings from this Court that are consistent with the law of Connecticut with respect to those claims and sites governed by the law of that jurisdiction and, with respect to Massachusetts, rulings which distinguish between interpreting an arguably ambiguous insurance policy provision from creating an estoppel arising out of dishonest conduct by an insurance carrier in the regulatory process and its public posture.

For these reasons the defendants, the Black & Decker group, pray for partial summary judgment on the issues and claims that have been briefed here.

Respectfully submitted,

February 9, 1998

Jack R. Pirozzolo, BBO #400100
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Attorney for Defendants

240

# Tab 5.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE BLACK & DECKER CORPORATION, BLACK & DECKER INC., BLACK & DECKER (U.S.) INC., EMHART CORPORATION, and EMHART, INC., )<br><br>Defendants. ) | CIVIL ACTION<br>NO. 96-10804-DPW |

COPY

OPPOSITION OF LIBERTY MUTUAL INSURANCE COMPANY
TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Ralph T. Lepore, III (BBO #294420)
Robert A. Whitney (BBO #545675)
Kenneth R. Brown (BBO #557052)
Karen R. Sweeney (BBO #557050)
Peter J. Duffy (BBO #566682)
WARNER & STACKPOLE LLP
75 State Street
Boston, MA 02109
(617) 951-9000

**H.     The Huth Oil Services Site, Cleveland, Ohio**

Liberty Mutual is entitled to summary judgment as to the Huth Oil Site because any
contamination at the Huth Oil Site was not a result of a sudden and accidental event or events
within the meaning of the exception to the pollution exclusion.  Liberty Mutual's Memorandum
at 237-238.

The Defendants admitted that they are defending the underlying action on the ground that
they did not engage in the complained of action.  Defendants' Memorandum at 167.  Moreover,
the statements prepared by private investigators that purport to support the allegation that Black
& Decker transported material to the site, in the case of Carl Stutzman, were specifically denied
during a deposition and, in the case of John Ockenga, are hearsay at best and possibly double
hearsay.  Deposition of Carl Stutzman dated August 9, 1995 at 202-210; Defendants' Appendix
at XXXIII (33) at 70-72; Liberty Mutual's Exhibit Binder 28, at Tab 20; and Interview Report by
Consulting Investigators, Inc. of John Ockenga, dated November 20, 1991 ("Interview Report");
Defendants' Appendix at XXXIII (33) at 42-54; Liberty Mutual's Exhibit Binder 28, at Tab 21.
The Interview Report states that Mr. Ockenga, a part-time hauler, does <u>not</u> know what specific
materials were picked up at most of the locations listed in the Interview Report because other
drivers made the pick ups at those locations.  Interview Report at 12.    Black & Decker is only
one of approximately 254 entities listed in the Interview Report of John Ockenga.  <u>Id.</u> at 1-13.
The only other evidence submitted for review is an unauthenticated "invoice" that Defendants
contend indicates that Huth Oil paid Black & Decker $300 in January of 1970.  Defendants'
Appendix at XXXIII (33) at 73; Liberty Mutual's Exhibit Binder 28, at Tab 20.  None of the

above information, however, indicates that any "property damage" occurred at the site during the policy periods at issue.

The Defendants assert that a so-called "sudden and accidental" event took place at the Huth Oil Site because a release of 75,000 gallons of oil occurred at the site in 1953 when lighting allegedly struck an oil tank. Defendants' Memorandum at 166. Even assuming arguendo that the alleged incident was both "sudden and accidental," such a discrete instance of leakage cannot give rise to coverage because the Defendants cannot show that the event was more than a de minimus source of the pollution at the Huth Oil Site. See Highlands Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 229 (1997).

In Highlands, the Court found that a 1958 fire caused some undifferentiated, continuing property damage during the policy period is not sufficient to defeat a motion for summary judgment. Id. at 229. Unlike in Highlands, Defendants have set forth no evidence that the release of oil in 1953, a tremendous amount of which burned off during a fire, caused continuing property damage during the policy period at issue, some twenty years later. See Deposition of Richard Stutzman, dated September 12, 1995, at 26-29; Defendants' Appendix at XXXIII (33) at 78-79; Liberty Mutual's Exhibit Binder 28 at Tab 22.

## I.    The Jaffrey Landfill Site, Jaffrey, New Hampshire

As set forth in Liberty Mutual's Memorandum, Liberty Mutual is entitled to summary judgment as to the Jaffrey Landfill Site because there has been no property damage at the site within the meaning of the policies at issue. Liberty Mutual's Memorandum at 238-243.

Notwithstanding the foregoing, the Defendants erroneously suggest that they merit summary judgment as to the Jaffrey Landfill Site under the PCI Policies. Defendants'

# Tab 6.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> THE BLACK & DECKER CORPORATION, ) <br> BLACK & DECKER INC., ) <br> BLACK & DECKER (U.S.) INC., ) <br> EMHART CORPORATION and ) <br> EMHART, INC., ) <br><br> Defendants. ) | CIVIL ACTION <br> NO. 96-10804-DPW |

FURTHER MEMORANDUM IN SUPPORT
OF BLACK & DECKER MOTION FOR
SUMMARY JUDGMENT WITH RESPECT
TO BLACK & DECKER SITES
(BROS, DOUGLASSVILLE AND HUTH)

November 13, 1998

Jack R. Pirozzolo, BBO# 400400
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Attorney for Defendants

PROTECTED INFORMATION

By Order of Court, this
envelope is to remain sealed
and the Clerk of this Court
shall not reveal the contents
thereof to any person other
than the Court or attorneys of
record for the parties until
further order of this Court.

pertains to this site.  As with BROS, there is evidence that A&A begin hauling waste oil from Black & Decker as early as the 1960's but no evidence that the waste oil from Black & Decker was taken to the Berks site.

D.  Huth

1.  The Underlying Claim

Black & Decker was named as a defendant in a cost recovery action relating to the Huth site, Centerior Service Co. et al. v. Allied-Signal Inc. et al., Civil Action No. 1:94CV1590, filed on August 4, 1994, in the United States District Court for the Northern District of Ohio (App. XXXIII:001-005).  The plaintiffs' claims are extremely vague even by modern pleading standards.  The complaint contained no allegations concerning the nexus between Black & Decker and the site.  Plaintiffs did not even identify the Black & Decker facility whose waste was allegedly shipped to Huth.  One count has been dismissed, subject to an interlocutory appeal, and the other count remains pending (App. XCIV, Hwang Affidavit).

In their complaint, the plaintiffs alleged that a waste oil reclamation facility was operated at the Huth site between 1938 and 1990 (App. XXXIII:003).  All allegations relating to the defendants, including Black & Decker, are set forth in the most general terms, with no suggestion of either the nature of, or timing of, their involvement.

2.  <u>Extrinsic Evidence</u>

a.  <u>The Site</u>

Huth collected waste oil from various manufacturing companies and brought it to the site for reclamation.  According to Richard Stutzman, a Huth driver, there was a spill of approximately 75,000 gallons of oil at the site in 1953 (App. XXXIII:075, 078-79).  The spill occurred due to a fire that started when lightning struck an oil tank.

b.  <u>Connection Between Black & Decker And Huth</u>

In the proceedings on Black & Decker's motion for summary judgment in the underlying case, the opposition of the plaintiffs was predicated largely on notes of interviews with drivers who allegedly transported waste from Black & Decker to Huth (App. XXXIII:033-045).  The only Black & Decker site tentatively identified by one of the plaintiffs' witness was located in Canton, Ohio (App. XXXIII:040).  That plant ceased operations in the 1940's.

The plaintiffs in the underlying case produced an alleged statement of a driver, John Ockenga, who was allegedly employed by Huth during part of the period 1949-1968, that Huth did business with Black & Decker in that time frame (App. XXXIII:041-042, 045).  Similarly, Mr. Stutzman, employed by Huth between 1946 and 1990, allegedly stated that he picked up oil from Black & Decker over a 15 to 20 year period

(App. XXXIII:015, 039-40) although he denied having such
knowledge when he was subsequently deposed (App. XXXIII:067,
070-072). Plaintiffs also produced a ledger page allegedly
reflecting a transaction between Black & Decker and Huth on
January 20, 1970 (App. XXXIII:073).

      E.  <u>Notice To Liberty Mutual</u>

      Black & Decker gave Liberty Mutual notice of all three
claims. Notice of the BROS and Douglasville/Berks claims were
by letter dated March 3, 1994 (App. XXXI:189-191). Notice of
Huth was by letter of August 16, 1994 (App. XXXIII:226-237).

      Liberty Mutual seeks to avoid payment of pre-notice
attorney's fees for the Douglasville/Berks site based upon the
date of notice. However, Liberty Mutual was aware of the site,
and of potential claims from insureds with respect to it, well
before Black & Decker's involvement. <u>See</u>, <u>e.g.</u>, memorandum of
John Vlastelin, regarding site history and his recommendation to
deny all claims based upon the discredited manifestation trigger
(App. XXXII:138-139).

      III.  <u>ARGUMENT</u>

      A.  Liberty Mutual Has Preserved Only
          A Pollution Exclusion Defense And Only
          <u>With Respect To Two Sites, BROS And Huth</u>

      Liberty Mutual was directed by this Court to detail
its position with respect to each claim against it. That
instruction was prompted, at least in part, by the general

the mutual benefit of both insurer and insured." Id.  Instead,
Liberty Mutual seeks to benefit from the weakness of the
underlying claim while leaving its insured to fend for itself.
Liberty Mutual's attempt to use a "groundless" claim argument to
avoid defending a claim to which it has no colorable coverage
defenses[6] is indicative of its utter failure to honor its
obligations to the Black & Decker Group with respect to the
insurance claims at issue in this litigation.

## IV.  CONCLUSION

Summary judgment should be granted for Black & Decker
on the BROS, Douglasville/Berks, and Huth claims.  Liberty
Mutual's motion should be denied.  If, for some reason, the
Court finds it necessary to go beyond the allegations in the
complaining documents and to consider arguments of Liberty
Mutual based upon extrinsic evidence, the extrinsic evidence, at
most, raises questions of fact requiring trial.

Respectfully submitted,

Jack R. Pirozzolo  BBO#400400
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts  02110
(617) 482-5470

I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail hand on _11/13/98_

Katherine Gray

___

[6]    As shown above, Liberty Mutual's relies upon a pollution exclusion
defense while conceding the very facts which show its argument is baseless.
In other words, Liberty Mutual's pollution exclusion defense in Huth rests on
no evidence whatsoever.