# Tab 7.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> THE BLACK & DECKER CORPORATION, BLACK & DECKER INC., BLACK & DECKER (U.S.) INC., EMHART CORPORATION, and EMHART INDUSTRIES, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 96-10804-DPW |

---

**SUPPLEMENTAL MEMORANDUM SUPPORTING LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE BROS, BERKS LANDFILL, HUTH OIL, ANSONIA AND DERBY SITES**

---

Ralph T. Lepore, III, Esq.
Robert A. Whitney, Esq.
Kenneth R. Brown, Esq.
Peter J. Duffy, Esq.
HOLLAND & KNIGHT LLP
18 Tremont Street
Boston, MA 02108
(617) 619-9200

## I.    Introduction

Pursuant to the request of the Court made at the continued hearing on the cross-motions

for summary judgment on October 30, 1998, the plaintiff, Liberty Mutual Insurance Company

("Liberty Mutual"), respectfully submits this Supplemental Memorandum in further support of its

Motion For Summary Judgment with respect to the BROS, Berks Landfill[1], Huth Oil, Ansonia

and Derby Sites and in opposition to the Defendants' motion for partial summary judgment.

At the first hearing on the cross-motions for summary judgment in this case on May 18,

1998, this Court ruled that: (i) Maryland law governs all claims for insurance coverage under the

Black & Decker line of insurance policies at issue; and (ii) Connecticut law governs all claims

for insurance coverage under Farrel line of insurance policies at issue. Furthermore, at the

continued hearing on the cross-motions for summary judgment of October 30, 1998, this Court

requested that the parties provide supplemental briefing with respect to: (i) the application of

Maryland law to the BROS, Berks Landfill and Huth Oil Sites for which Defendants have made

claims under the line of insurance policies issued to the "Black & Decker Manufacturing

Company" ("Black & Decker"); and (ii) the application of Connecticut law to the Ansonia and

Derby Sites for which Defendants have made claims under the line of insurance policies issued to

the "Farrel Company" ("Farrel").[2] Accordingly, Liberty Mutual hereby respectfully submits this

Supplemental Memorandum.

---

[1]    In their papers, Defendants also refer to the Berks Landfill by its uncommon name "Douglasville". See, e.g., Defendants' Further Memorandum in Support of Summary Judgment as to Black & Decker Sites at 1.

[2]    In this litigation, the Court has been asked to determine whether coverage exists under certain existing and alleged Liberty Mutual policies for the Defendants' defense and indemnification costs claimed in connection with 29 allegedly contaminated sites. Of the 29 contaminated sites at issue, however, only 13 implicate the Black & Decker and Farrel lines of insurance coverage. The Sites implicating the Black & Decker line of insurance coverage are: (1) BROS Site, Logan Township, NJ; (2) Berks Landfill Site, Berks County, PA; (3) Huth Oil Services Site, Cleveland,

cleanup of the area. Id. at 41-42. There is no dispute, however, that the materials allegedly sent

to the Site by A&A, which may or may not have included waste oils originated at the Black &

Decker Hampstead, Maryland facility, were not delivered to the Site until 1973, a year after the

alleged "overflows."[15]

### 3.    The Huth Oil Services Site, Cleveland, Ohio

#### a.    Factual Background And Allegations Of Contamination At The Site

The Huth Oil Services Site is a waste oil reclamation facility and is operated by the Huth

Oil Service Company ("Huth Oil") in Cleveland, Cuyahoga County, Ohio. By letter dated April

6, 1994, Huth Oil PRP Group made up of Huth Oil Services Company, Ashland Chemical

Company, General Electric Company and Cleveland Electric Illuminating Company, requested

that Black & Decker voluntarily participate with the Group in investigating the Site, and

requested that Black & Decker pay towards the cost of alleged remediation of activities at the

Site. See Letter from D. Dumas of Thomas, Mine & Flory, counsel to the Huth Oil PRP Group

to H. Rodgville, Black & Decker, dated April 6, 1994 (Binder 26, at Tab H-1). The letter

indicated that if Black & Decker chose not to pay the requested amount, it would be joined in a

suit. Black & Decker has alleged that it received an apparent "receipt and ledger sheet" from

Huth Oil that indicated that an unknown Black & Decker facility paid Huth Oil $300 on

January 20, 1970 for unknown services; Black & Decker however, denies ever shipping any oil

wastes to the Huth Oil Services Site. Defendants' Statement Pursuant to Order of July 29, 1996

---

[15]    Even if the "overflow" were to be considered "sudden and accidental," any property damage purported to
have resulted from the hurricane could not have included any waste oil materials sent to the site by Black & Decker.
To the extent that property damage in the form of environmental contamination is claimed to have taken place after
1973, which would have included the waste oil from Black & Decker, there is no evidence, or allegations for that

at 38 (Binder 7, at Tab 4);  Defendants' Int. Responses, Tier II Appendix, at 52 (Binder 8, at Tab 1).

On or about August 4, 1994, the action of Centerior Services Co., et al. v. Allied-Signal, et al., Case No. 1:94CV 1590 (N.D. Ohio) against Black & Decker among others was filed.  On October 7, 1994, Black & Decker filed a motion to dismiss in the Centerior litigation.  Black & Decker then filed a motion for summary judgment, which is still pending.  Defendants' Int. Responses, Tier II Appendix, at 57 (Binder 8, at Tab 1).

### b. There Is No Coverage Under The Black & Decker Policies With Respect To Any Alleged Property Damages At The Site

The demand made upon Black & Decker by the Huth Oil PRP Group, specifically referenced the $300 payment made by an unknown Black & Decker facility on January 20, 1970, to Huth Oil for "unknown services."  No other demand against Black & Decker with respect to any shipments of waste oil from any of its facilities is set forth in the April 6, 1994 letter.  After Black & Decker failed to pay the requested amount of $50,000 to the Huth Oil PRP Group, Black & Decker was joined as a defendant in the Centerior Service Company action.  In that complaint against Black & Decker in the action, no other purported shipments of materials are identified as having been sent to the Huth Oil facility, and Black & Decker is described only as a purported "generator."  Therefore, the demand against Black & Decker, as set forth in the complaint, is limited to allegations of property damage resulting from a single shipment alleged to have come from a Black & Decker facility in 1970.

---

matter, that any such contamination was ever caused by the supposed "sudden and accidental" releases.  In fact, the evidence is only of long-term, operational leaks and discharges.

All Black & Decker policies from July 1, 1971 and forward, contain the standard pollution exclusion clause with the "sudden and accidental" exception. As such, there can be no coverage under these policies because the pollution at issue at the Site which resulted in property damage was neither "sudden" nor "accidental." See discussion, supra, in Section II(B)(3)(e); ARTRA, 338 Md. 560, 659 A.2d 1295.

The only evidence of any "releases" of contamination at the Site was that oil which had accumulated in the dike adjacent to several of the above ground oil storage tanks was contaminated by PCBs. See U.S. EPA Administrative Order pursuant to CERCLA dated October 5, 1990 (Binder 26, at Tab H-2). There are no allegations nor any documented evidence, however, of any non-routine, sudden and accidental releases which would have resulted in this contamination. As such, the discharge of pollutants at the facility must be deemed to have been part of the facility's routine and deliberate business activities. Accordingly those discharges at the Site were not "accidental" within the meaning of the "sudden and accidental" exception to the pollution exclusion. See discussion, supra, in Section V(A)(2)(b); ARTRA, 338 Md. 560, 659 A.2d 1295.

c.    **Black & Decker's Failure To Cooperate Precludes Coverage**

The Black & Decker Policies provide that "the insured shall cooperate with the company and, upon the company's request, assist in making settlements . . . ." See, e.g., Black & Decker Policy in effect July 1, 1971 (Binder 2A, at Tab 1, at MA LM 0001447). In the present case, Black & Decker failed to cooperate with Liberty Mutual in making settlement of the Huth Oil claim because it failed to notify Liberty Mutual of the settlement offer made by the Huth Oil PRP Group. Black & Decker's failure to cooperate precludes coverage under the Black & Decker Policies, because Liberty Mutual has been prejudiced thereby. Although under Maryland law an

insurer may deny coverage based on an insured's failure to cooperate only where the failure to cooperate has resulted in prejudice to the insurer, see Fidelity. & Casualty, Co. v. McConnaughy, 228 Md. 1, 179 A.2d 117 (1962), in the present case Liberty Mutual has established such prejudice.

By letter dated April 6, 1994, Huth Oil PRP requested that Black & Decker voluntarily participate with the Group in investigating the Site, and requested that Black & Decker pay $50,000 in full settlement of any obligations in an enclosed memorandum, dated March 25, 1994, for remediation of the Site. See Letter from D. Dumas of Thomas, Mine & Flory, counsel to the Huth Oil PRP Group to H. Rodgville, Black & Decker, dated April 6, 1994 (Binder 26, at Tab H-1), and the Memorandum from Huth Oil Group to Huth Oil Site PRPs, dated March 25, 1994 ("Huth Oil March 25, 1994 Settlement Memorandum") (Binder 30, at Tab 9). As set forth above, Black & Decker was named as a defendant in the Centerior Service Company action only after Black & Decker failed to pay the requested amount of $50,000 to the Huth Oil PRP Group.

Black & Decker did not notify Liberty Mutual of the settlement offer by the Huth Oil PRP group that all the claims against Black & Decker could be settled for $50,000. In fact, Liberty Mutual was not provided with a copy of the Huth Oil March 25, 1994 Settlement Memorandum until it was produced after an order by this Court. When the April 6, 1994 Letter from Mr. Dumas, counsel to the Huth Oil PRP Group, to Black & Decker was transmitted to Liberty Mutual in conjunction with the Defendants' demand for defense and indemnity, the Huth Oil March 25, 1994 Settlement Memorandum was specifically withheld from Liberty Mutual by the Defendants. As such, Liberty Mutual was never informed that the Huth Oil PRP Group had offered to settle the dispute for only $50,000.00, and the Defendants hid this settlement offer from Liberty Mutual. Although Black & Decker was ultimately dismissed from the underlying

action without payment of any remediation costs, it expended $71,356.00 in attorneys' fees for which it now seeks reimbursement from Liberty Mutual.  See Defendants' September 6, 1996 Statement at 48 (Binder 30, at Tab 3).

Liberty Mutual has unquestionably been prejudiced by Black & Decker's failure to forward the Huth Oil PRP Group's settlement request for Liberty Mutual to act upon.  Because Liberty Mutual was not forwarded the settlement request, Liberty Mutual lost the opportunity to settle the Huth Oil matter early on for $50,000.

      **d.**    **There Has Been No Accident Or Occurrence At the Huth Oil Site**

Defendants are not entitled to coverage with respect to the Huth Oil Site claim because the alleged property damage at issue at Huth Oil did not result from an accident or occurrence within the meaning of the Black & Decker policies.

In order for coverage to be available to Defendants under the Black & Decker policies, the Defendants must first prove that the underlying actions for which they now seek coverage, sought damages because of property damage arising from an "occurrence."  The Black & Decker policies define "occurrence" to mean:

> . . . an <u>accident</u>, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

See, e.g., Black & Decker Policy in effect July 1, 1970 (Binder 2A, at Tab 1, at MA LM 0002233) (emphasis added). Thus, as a general matter, the definition of "occurrence" has three components: (1) there must be an "accident"; (2) the "accident" must result in "bodily injury" or

"property damage"; and (3) the "bodily injury" or "property damage" cannot be "expected [or] intended from the standpoint of the insured."

Moreover, Maryland courts have repeatedly recognized that there can be no "occurrence" in an occurrence-based policy if the alleged injury is not the result of an accident. See Sheets v. The Brethren Mut. Ins. Co., 342 Md. 634, 646, 679 A.2d 540, 545 (1996); Lerner Corporation v. Assurance Company of America, 120 Md. App. 525, 707 A.2d 906, 1998 Md. App. LEXIS 74 at *18 (April 2, 1998) ("there is an occurrence only upon the happening of an 'accident'"). Maryland courts have repeatedly held that an occurrence-based policy requires an accident as a prerequisite to coverage. See Sheets v. The Brethren Mutual Insurance Company, 342 Md. 634, 646, 679 A.2d 542, 545 (1996) (in determining the existence of an occurrence, "the question before us is whether the [alleged injury-producing event] was an 'accident'"); Lerner Corporation v Assurance Company of America, 120 Md. App. 525, 707 A.2d 906 (1998) ("there is an occurrence only upon the happening of an 'accident'"). The Court of Appeals recently definitively established that an accident will be found where the "resulting damage was 'an event that takes place without [the insured's] foresight or expectation'". See Sheets, 342 Md. At 652, 679 A.2d at 548, quoting Harleysville v. Harris & Brooks, 248 Md. 148, 154, 235 A.2d 556, 559 (1967) (smoke damage resulting from careless burning of refuse was not "caused by accident") (emphasis added).

In the present case, Defendants cannot contend that the property damage at Huth Oil resulted from an accident. As set forth above, the only evidence of any "releases" of contamination at the Site was that oil which had accumulated in a dike adjacent to several above ground oil storage tanks was contaminated. See U.S. EPA Administrative Order pursuant to CERCLA dated October 5, 1990 (Binder 26 at Tab H-2). Defendants, however, have no

evidence that the contamination of the above ground storage tanks took place as a result of anything other than routine operations of the Huth Oil Site, not an accident. Indeed, in sending its waste oil off-site for disposal, Black & Decker had to have understood that the waste oil would be placed in such oil storage tanks. Black & Decker cannot seriously contend that the placement of its waste in storage tanks took place without its foresight or expectations.

Accordingly, Defendants cannot prove an accident or occurrence at the Huth Oil Site.

## VI.   Under Connecticut Law, No Coverage Exists For Defendants' Claims With Respect To The Ansonia And Derby Sites

As set forth more fully below, Liberty Mutual is entitled to summary judgment with respect to the three actions concerning the Ansonia and Derby Sites implicating the Farrel line of coverage. Under Connecticut law, Defendants bear the burden of proving they are entitled to the insurance coverage they seek. See Cole v. East Hartford Estates Ltd. Pshp., 1996 Conn. Super. LEXIS 1284, *8 (Conn. Super. Ct. May 15, 1996) ("As with the duty to indemnify, the insured bears the burden of proving the duty to defend"). Defendants cannot satisfy their burden of proof, however, because: (1) the Defendants have failed to demonstrate a duty to defend or indemnify; (2) the Defendants have failed to demonstrate any applicable exceptions to the relevant exclusions provided under the relevant policies; and (3) certain actions by or on behalf of the Defendants preclude the Defendants from any defense or indemnity by Liberty Mutual.

Although the Ansonia and Derby Sites implicate both the Farrel and USM lines of insurance coverage, only the Farrel line of insurance coverage is addressed in this Supplemental Submission, because this Court requested supplemental briefing on the Ansonia and Derby Sites only with respect to the application of Connecticut law. Under the Court's ruling during the hearing held on May 18, 1998, insurance coverage claims made under the USM line of coverage

## VII.  Conclusion

For the reasons stated above, Liberty Mutual requests that the Court grant its Motion for Summary Judgment with respect to its Complaint and the Defendants' Counterclaim, and deny the Defendants' Motion for Partial Summary Judgment.

LIBERTY MUTUAL INSURANCE COMPANY

By its attorneys,

Ralph T. Lepore, III BBO 294420
Robert A. Whitney BBO 545675
Kenneth R. Brown BBO 557052
Peter J. Duffy BBO 566682
HOLLAND & KNIGHT LLP
18 Tremont Street
Boston, MA 02108
(617) 619-9200

DATED:  December 1, 1998

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 1998 a true copy of the above document was served upon the Defendants' counsel, by hand.

Robert A. Whitney

# Tab 8.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, ) | CIVIL ACTION |
| ) | NO. 96-10804-DPW |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| THE BLACK & DECKER CORPORATION, ) | |
| BLACK & DECKER INC., ) | |
| BLACK & DECKER (U.S.) INC., ) | |
| EMHART CORPORATION and ) | |
| EMHART, INC., ) | |
| ) | |
| Defendants. ) | |

REPLY MEMORANDUM REGARDING
MARYLAND AND CONNECTICUT SITES

December 4, 1998

Jack R. Pirozzolo, BBO# 400400
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Attorney for Defendants

PROTECTED INFORMATION

By Order of Court, this
envelope is to remain sealed
and the Clerk of this Court
shall not reveal the contents
thereof to any person other
than the Court or attorneys of
record for the parties until
further order of this Court.

requires deletion of the pollution exclusion would enforce it with respect to a site in a jurisdiction that has determined the pollution exclusion to be unenforceable.  The pollution exclusion is not in play.  And even if it were, there were sudden and accidental events at all three sites (BD Md 37-38).

Pre-notice Attorneys Fees:  Sherwood is controlling. Pre-notice attorney's fees are recoverable for all three sites. The LM "tender" cases (see, LM 22-23 and n. 8) were expressly rejected by Sherwood.  Also see, n. 11, infra.

Huth:   The "cooperation" argument is (1) belated, (2) disingenuous, and (3) belied by the fact that notice of the $50,000 settlement proposal was given to LM by B&D on August 16, 1994 (XXXIII:226, 230, 232-33) and LM took no steps to participate or pay.  LM persists in its "groundless suit" argument in a "property damage" disguise without distinguishing the dispositive Sheets decision (BD Md 46-48).  LM's new "accident" argument also flies in the face of Sheets.  And LM inexplicably continues to base its Huth pollution exclusion argument upon extrinsic evidence of an alleged deposit that it concedes was made before adoption of the pollution exclusion (LM 58-59).

### THE FARREL AND SHW CLAIMS

Perversion of Policy Coverage:  The pollution exclusion is irrelevant as the Farrel and SHW complaints allege pre-

-4-

applicability of the "expected and intended" defense to the Farrel claims in both its June 14, 1994 coverage denial letter (App. XXXIV:214) and its October 10, 1995 draft letter agreeing to defend (App. XXXIV:210), but did not cite it as a basis for denying coverage in either letter or in its September 6, 1996 Statement, recognizing its inapplicability. Similarly the LM October 1995 letter cites the owned property exclusion (App. XXIV:213), but LM still agrees to defend (App. XXIV:212). Faced with summary judgment, LM should not be heard to raise new defenses which, on several occasions, it recognized could not be asserted in good faith.

LM is bound by the Submission, whether an analogy is drawn to a pretrial order or an affirmative defense.[42] Otherwise, the Court's Order would be meaningless and the Submission would have served no purpose.

Respectfully submitted,

Jack R. Pirozzolo BBO#400400
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts  02110
(617) 482-5470

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 5-4-95

---

[42]    Correa v. Hosp. San Francisco, 69 F.3d 1184, 1195 (1st Cir. 1995), cert. denied, 116 S.Ct. 1423 (1996); Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 449-50 (1st Cir. 1995).

# Tab 9.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE COMPANY,    )
    Plaintiff and Defendant in    )    CIVIL ACTION NO.
    Counterclaim,    )    96-10804-DPW
                             )
          v.    )
                             )
THE BLACK & DECKER CORPORATION,    )
BLACK & DECKER INC.,    )
BLACK & DECKER (U.S.) INC.,    )
EMHART CORPORATION, AND    )
EMHART INDUSTRIES, INC.,    )
    Defendants and    )
    Counterclaimants.    )

# D R A F T

MEMORANDUM AND ORDER
May 17, 2002

# D R A F T

99.)  In August 1993, Black & Decker was dismissed from the lawsuit by an order of the court.  (Dismissal Order, Defs.' Vol. XXXII at 145.)  While the defendants did not incur any settlement or remediation payments, they claim defense costs of $60,050.42. (Defs.' SOF, Douglassville ¶ 10, at 19.)

c.  <u>Cleveland, OH</u> - The final environmental claim pertaining to Black & Decker also involves an oil reclamation facility--the Huth Oil Services ("Huth") site in Cleveland, Ohio.  The Huth site allegedly operated from approximately 1938 until 1990. (Huth Complaint ¶ 10, Defs.' Vol. at 3.)  During 1990-1993, several parties participated in the cleanup of the Huth site pursuant to an administrative order by the EPA.  (<u>Id.</u> ¶¶ 14-15.) These parties then filed a cost recovery action under CERCLA against three defendants, including Black & Decker, who allegedly produced waste that was disposed of at the Huth site.  (<u>Id.</u> ¶ 23.)  The allegations in the complaint are vague, failing to describe the link between Black & Decker and the Huth site.  The defendants contend that they produced no waste that was sent to the Huth site, but did indicate that the alleged waste could be linked to a Black & Decker plant in Kent, Ohio, which was closed in 1940.[21]  (Defs.' Answers to First Interrogs., Tier II App., at

---

[21]  The plaintiff contends in its memorandum that the defendants admitted that they received in discovery in the Huth case a document that indicated Black & Decker made a payment to Huth in 1970 for unknown services.  (Pl.'s Mem. at 236-37.)  I have been unable to locate such a document or an averment by the

52.)  The action remains pending; to this point the defendants

claim defense costs of $96,451.01.  (Defs.' SOF, Huth ¶ 10, at

20.)

### B. Long-Term Exposure Claims

The defendants also seek coverage for seven "long term

exposure" actions involving claims by individuals for personal

injury allegedly caused by their exposure to manufacturing tools

or hazardous products manufactured by the defendants.  The Black

& Decker Group contends that these claims are covered under

policies issued by Liberty Mutual to them or their predecessors.

(Defs.' Mem. at 56-57.)  They seek summary judgment with respect

to five of them, demanding that Liberty Mutual reimburse them for

defense costs incurred and indemnify them for any settlements

paid.  (Id.)

The plaintiff contends that it has paid defense costs or

agreed to pay such costs for each of the five claims.  (Pl.'s

Opp'n at 88.)  On the issue of indemnification, Liberty Mutual

argues, with respect to the two claims for which settlement

payments have been made, that the Black & Decker Group has failed

to adduce any evidence that the conditions underlying these

actions bring them within the policies' coverage. (Pl.'s Opp'n at

92-93.)  Without such specific facts, it argues, the defendants

have failed to meet their burden under Fed. R. Civ. P. 56(c), and

_____

defendants.

**5/17/02 DRAFT**                    37

# Tab 10.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>v.<br><br>THE BLACK & DECKER CORPORATION,<br>BLACK & DECKER INC., BLACK & DECKER<br>(U.S.) INC., EMHART CORPORATION and<br>EMHART INDUSTRIES, INC.,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. No. 96-10804-DPW |

## JOINT SUPPLEMENTAL SUBMISSION

Pursuant to this Court's Procedural Order of May 17, 2002, the parties jointly file this supplemental submission, first, addressing proposed modifications to this Court's Draft Memorandum and Order on the pending cross-motions for summary judgment, and second, providing this Court with an updated Status Report, including anticipated further proceedings.

In recognition of the Court's Order that this not be an argumentative submission, the parties have withheld argument concerning each other's proposed changes to the Court's draft Order, and await the Court's invitation, if appropriate, to set forth reasons they believe the matter proposed by the opposing party is

BOS1 #1251359 v2

by defendants were incurred prior to defendants' tender of the defense of the Berks Landfill claim to Liberty Mutual by letter dated March 3, 1994. (LM's MSJ at 221 (citing Binder 26 at Tab E-1); LM's Opp. at 77 (citing B&D's MSJ at 160)). Also, defendants had already been dismissed from the third-party contribution lawsuit by the time they tendered defense of that lawsuit to Liberty Mutual. (LM's MSJ at 221; LM's Opp. at 77; LM's Supp. Memo at 55).

(c)    Cleveland, OH (Huth)

**Agreed suggested change**: p. 36, lines 7-8 – change "an oil reclamation facility" to a "waste oil reclamation facility"

**Plaintiff's suggested change**: p. 36, lines 8-9 – delete "approximately", changing "The Huth site allegedly operated from approximately 1938 until 1990" to "The Huth site allegedly operated from 1938 to 1990" (See Defs.' 11/13/98 Supp. Mem. at 14, citing Centerior v. Allied-Signal complaint [referred to by the Court as the "Huth complaint"]).

**Agreed suggested change**: p. 36, line 10 – insert "XXXIII" between "Vol." and "at".

**Plaintiff's suggested change**: p. 36, lines 10-12 – following the sentence ending on line 12, add: "By letter dated April 6, 1994, the Huth Oil PRP Group, made up of Huth Oil Services Company, Ashland Chemical Company, General Electric Company and Cleveland Electric Illuminating Company, requested that Black & Decker voluntarily participate with the Group in investigating the site, and requested that Black & Decker pay towards the cost of alleged remediation activities at the site. The letter indicated that if Black & Decker chose not to pay the requested amount, it would be joined in a suit. (See LM's MSJ at 236-37, citing 4/6/94 letter at Binder 26, Tab H-1). The demand made upon Black & Decker by the Huth Oil PRP Group specifically referenced the $300 payment made by an unknown Black & Decker facility on January 20, 1970, to Huth Oil for 'unknown services.' No other demand against Black & Decker with respect to any

shipments of waste oil from any of its facilities is set forth in the April 6, 1994 letter. (LM's Supp. Memo at 58)."

**Plaintiff's suggested change**: p. 36, lines 13-15 - change "These parties then filed a cost recovery action under CERCLA against three defendants, including B&D, who allegedly produced waste that was disposed of at the Huth site. (citing Huth Complaint ¶23, Defs.' Vol. at 3)" to "After Black & Decker failed to pay the requested amount of $50,000 to the Huth Oil PRP Group, the Group filed a cost recovery action under CERCLA, styled <u>Centerior Services Co., et al. v. Allied-Signal, et al.</u>, Case No. 1:94CV 1590 (N.D. Ohio), against Black & Decker and two other defendants who allegedly produced waste that was disposed of at the Huth site. (<u>See</u> Huth Complaint, ¶23; Defs.' Vol. 33 at 3; LM's MSJ at 237)."

**Plaintiff's suggested change**: p. 36, lines 17-21 – change "The defendants contend that they produced no waste that was sent to the Huth site, but did indicate that the alleged waste could be linked to a B&D plant in Kent, Ohio, which was closed in 1940. (citing Defs.' Ans. To First Ints, Tier II App., at 52)" to "The defendants contend that they produced no waste that was sent to the Huth site, and that the only alleged source of the waste that has emerged through discovery in the lawsuit is a former Black & Decker plant in Kent, Ohio, which ceased operations in the late 1940's. (Defs.' Interrog. Ans., Tier II App., at 52). Defendants have acknowledged that the former Huth Oil truck driver who allegedly identified the former Kent, Ohio plant as doing business with Black & Decker denied having such knowledge at his deposition, and denied having knowledge of any Huth Oil drivers making pick-ups at that plant. (<u>See</u> Defs.' 11/13/98 Supp. Mem. at 15-16 and App. XXXIII:040 and 070-072). Defendants have also acknowledged that the plaintiffs in the cost recovery action produced a ledger page allegedly reflecting a $300 transaction between Huth and an unknown Black & Decker facility for unknown services on January 20, 1970. (<u>See</u> Defs.'11/13/98 Supp. Mem. at 16; Dep. of Carl Stutzman and Exhibit 7 thereto, Defs.' App. XXXIII:072-073; Pl.'s MSJ Exhibits, Binder 28, at Tab 20)."

**Defendants' suggested change:** p. 36, line 21 – add the following after "1940" and delete footnote 21: "The plaintiffs in the <u>Huth</u> action produced a ledger page reflecting a $300 transaction between Huth and an unknown Black & Decker facility for unknown services on January 20, 1970."

**Plaintiff's suggested change:** p. 36, footnote 21 – delete this footnote.

**Agreed suggested change:** p. 37, lines 1-3 – change "The action remains pending; to this point the defendants claim defense costs of $96,451.01 (citing Defs.' SOF at 20)" to "The action settled in November, 2001 with Black & Decker paying $5,000 in alleged remediation costs. Black & Decker alleges that it incurred attorneys' fees in the amount of $151,598.62 for which it seeks reimbursement from Liberty Mutual."

B.    <u>Long-Term Exposure Claims</u>

**Defendants' suggested change:** p. 37, line 18 - replace "for which settlement payments have been made" with "that were still pending at the time the summary judgment motions were filed."

**Agreed suggested change:** p. 38, line 10: after "settlement" add the following: "at the time the summary judgment motions were filed; a fourth action subsequently was resolved without requiring the Black & Decker Group to pay any amount in settlement" and replace "The latter two remain" with "only the Alwell claim remains."

**Agreed suggested change:** p. 38, end of line 11 – add: "Black & Decker received substantial payments from another insurer in 1994 and 1995. Liberty Mutual does not yet know how much of that amount, if any, is applicable to matters at issue in this lawsuit. Black & Decker contends that those payments were the result of litigation regarding matters not at issue in this lawsuit."

1.    <u>Arkansas Hearing Loss</u>

**Agreed suggested change:** p. 39, line 3 – following the citation in line 3, insert the sentence: "The period of coverage begins in 1964, the date on which products were first sold from

early in this action, that it was Liberty Mutual that commenced the action to seek

an adjudicated resolution.  Black & Decker has embraced this position and, absent

Liberty Mutual's  payment of the claim, wishes that adjudication.


LIBERTY MUTUAL INSURANCE
COMPANY

By its Attorneys,


Respectfully submitted,

THE BLACK & DECKER
CORPORATION, ET ALS.

By their Attorneys,


_____
Ralph T. Lepore, III (BBO #294420)
Janice Kelley Rowan (BBO #265520)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated:  July 24, 2002


_____
Jack R. Pirozzolo (BBO #400400)
Richard L. Binder (BBO # 043240)
WILLCOX, PIROZZOLO &
MCCARTHY
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470


CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Dated: 7-24-02