1    defend, Your Honor, I just throw that out.  It does get

2    into the coverage issue as well.  Because at some point,

3    you, Your Honor, can make a determination that the

4    uncontroverted evidence establishes as a fact that there

5    is no coverage as of X date.  That means that the duty

6    to defend has terminated.

7            THE COURT:  But where would it be, by your

8    view, in this case in BROS -- when the other PRPs

9    abandon the threat to sue BROS?  Isn't that really when

10   it is?  And that's when all of the defense money has

11   been expended.  So, yes, there is a point.  And, of

12   course, there's a mechanism for you, which is to defend

13   on a reservation.

14           MR. LEPORE:  Yes, or file a DJ, which is what

15   we did.  And we filed it before that was resolved.

16           So, all I'm saying, Your Honor, is that at

17   some point in time, there was a fact that was

18   determinative that there was no coverage.  And at the

19   latest, it's uncontroverted.  At the latest, it's when

20   Black & Decker says that there was nothing before 1973.

21   Now, our argument is it goes way back.  But at some

22   point, it does terminate.  I'm not going to get into the

23   argument anymore.  I think Your Honor understands that.

24   I just wanted to point out that the duty to defend is

25   not forever.

1              THE COURT:  Right.

2              MR. LEPORE:  That's what that Maryland case

3      stands for.

4              THE COURT:  Right.  But it may be coterminus

5      with the expenditure of monies to defend by the private

6      party.  Since presumably, once it's clear, they don't

7      have to spend any money.  Nobody likes to spend money,

8      by and large, gratuitiously.

9              MR. LEPORE:  Acknowledged, Your Honor.  Thank

10     you.

11             THE COURT:  All right.  We'll be in recess.

12     And I'll see you on the 17th.

13             MR. LEPORE:  Thank you, Your Honor.

14             THE COURT:  Thanks.

15                    RECESSED AT 11:30 A.M.

16

17

18

19

20

21

22

23

24

25

1

C E R T I F I C A T E

2

3

4          I, PAMELA R. OWENS, Official Court Reporter,

5     U. S. District Court, do hereby certify that the

6     foregoing is a true and correct transcription of the

7     proceedings taken down by me in machine shorthand and

8     transcribed by same.  I certify that the transcript fees

9     charged and the page format used by me comply with the

10    requirement of this Court's court reporter plan and the

11    requirements of the Judicial Conference of the United

12    States.

*Pamela R. Owens* 10/18/03

13

14

15

16

17

18

19

20

21

22

23

24

25

# Tab 13.

# Exhibit A.

DUPLICATE
RECORDS CENTER
7TH FLOOR

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION V

| | |
|---|---|
| IN THE MATTER OF: | Docket No.  V-W- '90 -C- 74 |
| Huth Oil Services Company Site | ADMINISTRATIVE ORDER PURSUANT TO SECTION 106(a) OF THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT OF 1980 as amended, 42 U.S.C. Section 9606(a) |
| Respondents: | |
| The Huth Oil Services Company | |
| The Ashland Chemical Company | |
| The General Electric Company | |
| The Cleveland Electric Illuminating Company | |

PREAMBLE

This Administrative Order (the "Order") is issued on this date to Respondents: the Huth Oil Services Company; the Ashland Chemical Company; the General Electric Company; and the Cleveland Electric Illuminating Company, which are located at, respectively: 2891 East 83rd Street, Cleveland, Ohio; P.O. Box 2219, Columbus, Ohio; 1 River Road, Building 6-202, Schenectady, New York; and P.O. Box 94661, Cleveland, Ohio.

It is issued pursuant to the authority vested in the President of the United States by Section 106(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. Section 9606(a), as amended by the Superfund Amendments and Reauthorization Act of 1986 Pub. L. 99-499 ("CERCLA"), and delegated to the Administrator of the United States Environmental Protection Agency ("U.S. EPA") by Executive Order No. 12580, January 23, 1987, 52 Federal Register 2923, and further delegated to the Assistant Administrator for Solid Waste and Emergency Response and the Regional Administrators by U.S. EPA Delegation Nos. 14-14-A and 14-14-B, and to the Director, Waste Management Division, Region V, by Regional Delegation 14-14-A and 14-14-B.

By copy of this Order the State of Ohio has been notified of the issuance of this Order as required by Section 106(a) of CERCLA, 42 U.S.C. Section 9606(a).

This Order requires the Respondents to undertake and complete

2

emergency removal activities to abate an imminent and substantial endangerment to the public health and welfare or the environment that may be presented by the actual or threatened release of hazardous substances at the Huth Oil Service Company Site (the "Site").

## FINDINGS

Based on available information, including the Administrative Record in this matter, U.S. EPA hereby finds:

1. The Site is an operating waste oil reclamation facility located at 2891-2913 East 83rd St. in Cleveland, Cuyahoga County, Ohio. The Site is bordered on the south by the Ashland Oil Company, to the west by East 83rd Street, to the north by a metal scrap yard, and to the east by railroad tracks. The remaining surrounding area is a mix of light industry and residential homes. The tank farm at the Site consists of 12 vertical tanks, 11 horizontal tanks, 5 compartmentalized tankers, 2 buried tankers, and 3 underground storage tanks. The tank farm has a 992,000 gallon storage capacity.

2. The Huth Oil Service Company ("Huth Oil") was established in 1938 by George J. Huth, on property leased from the Columbia Refining Company. The lease was transferred to the Ashland Oil Company on May 11, 1964. George J. Huth leased the property from Ashland Oil Company until November 10, 1981, on which date he purchased the property. From April 11, 1986, to the present, the Site has been owned by Huth Oil. George J. Huth died on February 10, 1990.

3. On April 15, 1983, U.S. EPA National Enforcement Investigation Center ("NEIC") conducted an inspection of the Site, and sampled several tanks. The results of the NEIC sampling showed that two of the eleven tanks sampled were contaminated with poly-chlorinated biphenyls ("PCBs").

4. The Ohio Environmental Protection Agency ("OEPA") inspected the Site on December 5, 1985. This inspection revealed that oil had accumulated in the dike of tank #60B. OEPA sampling showed PCB contamination of 504 parts per million ("ppm") in this dike, and at 17.2 ppm near an adjacent tank.

5. On June 2, 1986, Huth Oil was judged under the Toxic Substances Control Act to be in violation of 40 CFR 761.60 for failure to mark a PCB storage tank, and failure to develop and maintain annual PCB documents.

6. On June 6, 1988, the U.S. EPA Technical Assistance Team ("TAT") conducted a site assessment and a Spill Prevention Control and Countermeasure ("SPCC") inspection at the Site. Several

25EPA 0009

3

SPCC violations were discovered, including tanks without dikes, free standing oil in dikes, severely corroding tanks, cracked or slumping dike walls, uncontained water from the oil/water separators draining off-site, and no emergency procedures. The TAT collected eight (8) samples from the free standing oil and six (6) soil samples. The sample results indicated oil in the diked areas of tanks #60B, #2, #158, and #125 contained PCBs at concentrations greater than 50 ppm, and localized PCB contamination of saturated soils at the Site.

7.  On May 24-26, 1989, the TAT conducted sampling of twelve vertical tanks, eight horizontal tanks, and five tankers, including the two underground tankers. Sample results indicated that eight of the tanks and tankers contained PCBs, five at concentrations greater that 50 ppm. The sample collected from tank #10G had the highest test total PCB concentration at 1,120 ppm. Tank #10G is not within a dike and has an estimated volume of 8,300 gallons. The oil/water separator and buried tankers #3 and #21 were contaminated with PCBs.

8.  The Site is in very dilapidated condition. Waste oil tanks are corroded, several are not diked, and unauthorized access is possible through gaps in the fence surrounding the facility. Vandalism has occurred at the Site.

9.  An undetermined amount of the PCB oil which arrived at the Site was contained in dielectric fluids drained from electrical transformers. Prior to the passage of TSCA in 1978, transformer oils containing PCBs were disposed of like all other waste oils. Many damaged and otherwise used transformers were sent to the Wing Electric Company ("Wing"), a transformer reclamation company which went out of business in 1974. Wing would drain the oil from the transformers, and sell the oil to waste oil dealers, including Huth Oil. Huth Oil also received PCB contaminated waste oils directly from other sources.

DETERMINATIONS

Based on the foregoing Findings, U.S. EPA has determined that:

1.  The Huth Oil Services Company Site is a "facility" as defined by Section 101(9) of CERCLA, 42 U.S.C. Section 9601(9).

2.  Each Respondent is a "person" as defined by Section 101(21) of CERCLA, 42 U.S.C. Section 9601(21).

3.  The Huth Oil Services Company is the present "owner" and "operator" of the Site, as defined by Section 101(20) of CERCLA, 42 U.S.C. Section 9601(20).

25EPA 0010

4

4.    Respondents Ashland Chemical Company, General Electric Company, and Cleveland Electric Illuminating Company are either past owners or operators of the Site, or arranged for disposal or transport for disposal of hazardous substances at the Site. Respondents are therefore liable persons under Section 107(a) of CERCLA, 42 U.S.C. Section 9607.

5.    PCBs are "hazardous substances" as defined by Section 101(14) of CERCLA, 42 U.S.C. Section 9601(14). PCBs are capable of causing both short-term and long-term local and systematic health effects in humans. Living organisms may accumulate PCBs by absorption, inhalation and ingestion. PCBs have a long retention time in living organisms and each succeeding ingestion of PCBs contributes to a net accumulation. PCBs are known to bio-accumulate in the food chain.

6.    PCBs have been shown to produce a variety of adverse effects in studies of aquatic organisms and experimental animals. Such effects are related to the dose of PCBs received, so that a higher dose produces a greater effect. Effects of PCBs observed in experimental animals include weight loss, liver injury, atrophy of lymphoid tissue with suppression of immune response, reproductive impairment such as infertility and low birth rate, carcinogenicity, and death.

7.    Persons exposed to PCBs can develop chloracne and, based on laboratory animal data, there is potential for reproductive effects and developmental toxicity as well as oncogenicity in humans exposed to PCBs. PCBs are very stable compounds which can persist for years when released into the environment. Based upon the documented health impacts on humans and experimental results with laboratory animals, PCBs are a suspected human carcinogen.

8.    The presence of numerous PCB contaminated oil tanks without proper dikes, oil/water separator lagoons overflowing, and contaminated soil constitutes an actual or threatened "release" as that term is defined in Section 101(22) of CERCLA, 42 U.S.C. Section 9601(22).

9.    The actual or threatened release of hazardous substances from the Facility may present an imminent and substantial endangerment to the public health, welfare, or the environment.

10.   The actions required by this Order, if properly performed, are consistent with the National Contingency Plan ("NCP"), 40 CFR Part 300, as amended, and CERCLA; and are reasonable and necessary to protect the public health, welfare and the environment.

11.   The conditions present at the Facility constitute a threat to public health or welfare or the environment based upon consideration of the factors set forth in the NCP, Section 300.65(b)(2). These factors include, but are not limited to, the following:

5

    a.  **actual or potential exposure to hazardous substances by nearby populations, animals, or food chain;**

This factor is present at the Facility due to the existence of several PCB contaminated oil tanks without proper dikes, oil/water separator lagoons overflowing, and contaminated soil.

    b.  **hazardous substances in drums, barrels, tanks, or other bulk storage containers, that may pose a threat of release;**

This factor is present at the Facility due to the existence of several PCB contaminated oil tanks without proper dikes, several of which are of questionable integrity.

    c.  **high levels of hazardous substances in soils largely at or near the surface that may migrate;**

This factor is present at the Facility due to the existence of contaminated soils.

    d.  **weather conditions that may cause hazardous substances to migrate or be released;**

This factor is present at the Facility due to the existence of oil/water separator lagoons overflowing.

## ORDER

Based upon the foregoing Findings and Determinations, and pursuant to Section 106(a) of CERCLA, 42 U.S.C. Section 9606(a), it is hereby Ordered that Respondents undertake the following actions at the Facility:

1.    Within five (5) calendar days after the effective date of this Order, the Respondents shall submit to U.S. EPA, a Work Plan for the removal activities ordered in Paragraph 4, below ("Work Plan 1"). Within twenty-five (25) calendar days after the effective date of this Order, the Respondents shall submit to U.S. EPA a Work Plan for the removal activities ordered in Paragraph 5, below ("Work Plan 2"). Each Work Plan shall provide a concise description of the activities to be conducted to comply with the requirements of this Order. Each Work Plan shall be reviewed by U.S. EPA, which may approve, disapprove, require revisions, or modify the Work Plans. Respondents shall implement each Work Plan as finally approved by U.S. EPA. Once approved, each Work Plan shall be deemed to be incorporated into and made a fully enforceable part of this Order.

2.    Each Work Plan shall contain a site safety and health plan, a

25EPA 0012

6

sampling and analysis plan, and a schedule of the work to be performed. The site safety and health plan shall be prepared in accordance with the Occupational Safety and Health Administration regulations applicable to Hazardous Waste Operations and Emergency Response, 29 CFR Part 1910. The Work Plans and other submitted documents shall demonstrate that the Respondent can properly conduct the actions required by this Order.

3.  Respondents shall retain a contractor qualified to undertake and complete the requirements of this Order, and shall notify U.S. EPA of the name of such contractor within two (2) days of the effective date of this Order. U.S. EPA retains the right to disapprove of any, or all, of the contractors and/or subcontractors retained by the Respondents. In the event U.S. EPA disapproves of a selected contractor, Respondents shall retain a different contractor to perform the work, and such selection shall be made within two (2) business days following U.S. EPA's disapproval.

4.  Within five (5) calendar days after U.S. EPA approval of Work Plan 1, Respondents shall implement Work Plan 1 as approved or modified by U.S. EPA. Failure of the Respondents to properly implement all aspects of Work Plan 1 shall be deemed to be a violation of the terms of this Order. Work Plan 1 shall require the Respondents to perform, and complete within thirty (30) calendar days after U.S. EPA approval, the following removal activities:

    a.  Secure the Site by repairing all gaps in the fence surrounding the Site.

    b.  Remove and properly store or dispose of all free standing oil in dikes; repair cracked or slumping dikes surrounding all above ground tanks which contain any liquids, and take necessary measures to prevent the release of liquids from the oil\water separator, the lagoon, dikes, or tanks.

    Work Plan 1 shall also require the Respondents to perform, and complete within one hundred and ten (110) calendar days after U.S. EPA approval, the following removal activities:

    c.  Remove and properly treat or dispose of all liquids contaminated with PCBs or any other hazardous substance or hazardous waste.

5.  Within five (5) calendar days after U.S. EPA approval of Work Plan 2, Respondents shall implement Work Plan 2 as approved or modified by U.S. EPA. Failure of the Respondents to properly implement all aspects of Work Plan 2 shall be deemed to be a violation of the terms of this Order. Work Plan 2 shall require the Respondents to perform, and complete within one hundred and eighty (180) calendar days after U.S. EPA approval, the following

7

removal activities:

> Remove and properly dispose of all soil and sludge contaminated with PCBs or any other hazardous substance or hazardous waste.

Cleanup of contaminated soil must result in on-site PCB levels which do not anywhere exceed 10 parts per million (ppm) by weight. Contaminated soil must be excavated to a minimum depth of 10 inches, and must be replaced with clean soil (i.e. containing less than 1 ppm PCBs). Work Plan 2 shall contain provision for post-cleanup sampling, whereby Respondents demonstrate to U.S. EPA that the cleanup levels required by this paragraph have been achieved.

6.  All contaminated liquids, soils, and sludges removed pursuant to this Order shall be disposed of or treated at a facility approved by the On-Scene Coordinator and in accordance with the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 9601 et seq., as amended ("RCRA"), all regulations implemented under RCRA, including but not limited to 40 CFR Part 268, the U.S. EPA Revised Off-Site Policy, the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq., 40 CFR Part 761, and all other applicable Federal, State, and local requirements.

7.  On or before the effective date of this Order, the Respondents shall designate a Project Coordinator. To the greatest extent possible, the Project Coordinator shall be present on site or readily available during site work. The U.S. EPA has designated Joseph Fredle of the Emergency and Enforcement Response Branch, Response Section I, as its On-Scene Coordinator. The On-Scene Coordinator and the Project Coordinator shall be responsible for overseeing the implementation of this Order. To the maximum extent possible, communication between the Respondents and the U.S. EPA, and all documents, reports and approvals, and all other correspondence concerning the activities relevant to this Order, shall be directed through the On-Scene Coordinator and the Project Coordinator.

8.  The U.S. EPA and the Respondents shall each have the right to change their respective designated On-Scene Coordinator or Project Coordinator. U.S. EPA shall notify the Respondents, and Respondents shall notify U.S. EPA, as early as possible before such a change is made, but in no case less then 24 hours before such a change. Notification may initially be verbal, but shall promptly be reduced to writing.

9.  The U.S. EPA On-Scene Coordinator shall have the authority vested in an On-Scene Coordinator by the NCP, 40 CFR Part 300, as amended, including the authority to halt, conduct, or direct any work required by this Order, or to direct any other response action undertaken by U.S. EPA or the Respondents at the facility.

25EPA 0014

8

10. No extensions to the above time frames shall be granted without sufficient cause. All extensions must be requested, in writing, and shall not be deemed accepted unless approved, in writing, by U.S. EPA.

11. All instructions by the U.S. EPA On-Scene Coordinator or his designated alternate shall be binding upon the Respondents as long as those instructions are not inconsistent with the National Contingency Plan or this Order

12. To the extent that the Facility or other areas where work under this Order is to be performed is owned by, or in possession of, someone other than the Respondents, Respondents shall obtain all necessary access agreements. In the event that after using their best efforts Respondents are unable to obtain such agreements, Respondents shall immediately notify U.S. EPA. U.S. EPA may then assist Respondents in gaining access, to the extent necessary to effectuate the response activities described herein, using such means as it deems appropriate.

13. Respondents shall provide access to the Facility to U.S. EPA employees, contractors, agents, and consultants at reasonable times, and shall permit such persons to be present and move freely in the area in order to conduct inspections, including taking photographs and videotapes of the Facility, to do cleanup/ stabilization work, to take samples to monitor the work under this Order, and to conduct other activities which the U.S. EPA determines to be necessary.

14. Nothing contained herein shall be construed to prevent U.S. EPA from seeking legal or equitable relief to enforce the terms of this Order, or from taking other legal or equitable action as it deems appropriate and necessary, or from requiring the Respondents in the future to perform additional activities pursuant to CERCLA, 42 U.S.C. Section 9601 et seq., or any other applicable law.

15. The provisions of this Order and the directions of the On-Scene Coordinator shall be binding on the employees, agents, successors, and assigns of the Respondents.

16. This Order shall be effective five (5) calendar days following issuance.

17. On or before five (5) calendar days of the effective date of this Order, Respondents shall provide notice, verbally or in writing, to U.S. EPA stating their intention to comply with the terms of this Order. Verbal notification must be followed in writing within three (3) calendar days. In the event any Respondents fail(s) to provide such notice, that (those) Respondents shall be deemed not to have complied with the terms of this Order.

25EPA 0015

9

18. Copies of all records and files relating to hazardous substances found on the site shall be retained for six years following completion of the activities required by this Order and shall be made available to the U.S. EPA prior to the termination of the removal activities under this Order.

19. The Respondents shall submit a final report summarizing the actions taken to comply with this Order. The report shall contain, at a minimum: identification of the facility, a description of the locations and types of hazardous substances encountered at the facility upon the initiation of work performed under this Order, a chronology and description of the actions performed (including both the organization and implementation of response activities), a listing of the resources committed to perform the work under this Order (including financial, personnel, mechanical and technological resources), identification of all items that affected the actions performed under the Order and discussion of how all problems were resolved, a listing of quantities and types of materials removed, a discussion of removal and disposal options considered for those materials, a listing of the ultimate destination of those materials, and a presentation of the analytical results of all sampling and analyses performed and accompanying appendices containing all relevant paperwork accrued during the action (e.g., manifests, invoices, bills, contracts, permits). The final report shall also include an affidavit from a person who supervised or directed the preparation of that report. The affidavit shall certify under penalty of law that based on personal knowledge and appropriate inquiries of all other persons involved in preparation of the report, the information submitted is true, accurate and complete to the best of the affiant's knowledge and belief. The report shall be submitted within sixty (60) days of completion of the work required by the U.S. EPA.

20. All notices, reports and requests for extensions submitted under terms of this Order shall be sent by certified mail, return receipt requested, and addressed to the following:

      one copy    Joseph Fredle
                  On-Scene Coordinator
                  U.S. EPA (5SEDO)
                  25089 Center Ridge Road
                  Westlake, Ohio  44145

      one copy    John Breslin
                  Assistant Regional Counsel
                  U.S. EPA (5CS-TUB-7)
                  230 South Dearborn Street
                  Chicago, Illinois  60604

21. If any provision of this Order is deemed invalid or unenforceable, the balance of this Order shall remain in full force and effect.

10

## ACCESS TO ADMINISTRATIVE RECORD

The Administrative Record supporting the above Determinations and Findings is available for review on normal business days between the hours of 9:00 a.m. and 5:00 p.m. in the Office of Regional Counsel, United States Environmental Protection Agency, Region V, 111 W. Jackson Blvd., Third Floor, Chicago, Illinois.  Please contact John Breslin, Assistant Regional Counsel, at (312) 886-7165 to review the Administrative Record.  An index of the Administrative Record is attached hereto.

## RESPONSE COSTS

Respondents are hereby placed on notice that U.S. EPA will take any action which may be necessary in the opinion of U.S. EPA for the protection of public health and welfare and the environment, and Respondents may be liable under Section 107(a) of CERCLA, 42 U.S.C. Section 9607(a), for the costs of those government actions.

## PENALTIES FOR NONCOMPLIANCE

Respondents are advised pursuant to Section 106(b) of CERCLA, 42 U.S.C. Section 9606(b), that willful violation or subsequent failure or refusal to comply with this Order, or any portion thereof, may subject the Respondents to a civil penalty of no more than $25,000 per day for each day in which such violation occurs, or such failure to comply continues.  Failure to comply with this Order, or any portion thereof, without sufficient cause may also subject the Respondents to liability for punitive damages in an amount three times the amount of any cost incurred by the government as a result of the failure of Respondents to take proper action, pursuant to Section 107(c)(3) of CERCLA, 42 U.S.C. Section 9607(c)(3).

By: _David A. Ullrich_
    David Ullrich, Director
    Waste Management Division
    United States Environmental
        Protection Agency
    Region V

_October 5_ , 1990

25EPA 0017

ADMINISTRATIVE RECORD

FOR

HUTH OIL COMPANY

MAY 21, 1990

| DATE | AUTHOR | RECIPIENT | TITLE/DESCRIPTION | PAGES |
|------|--------|-----------|-------------------|-------|
| 12/12/89 | Weston | D. Heaton | Cover letter | 2 |
| 12/12/89 | Weston | D. Heaton | Sampling Investigation | 34 |
| 09/30/88 | Weston | S. Faryan | Cover letter | 2 |
| 09/30/88 | Weston | S. Faryan | Site Assessment | 15 |
| 06/10/90 | Weston | D. Heaton | Cover Letter | 2 |

UPDATE JUNE 25, 1990

| | | | | |
|------|--------|-----------|-------------------|-------|
| 06/10/90 | Weston | D. Heaton | Removal Action Plan | 46 |

25EPA 0018

## HUTH OIL COMPANY SITE

Ashland Chemical
P.O. Box 2219
Columbus, Ohio  43126
Attn:  Kristina M. Woods

Cleveland Electric Illuminating
c/o Centerior Energy
P.O. Box 94661
Cleveland, Ohio  44101-4661
Attn:  William J. Kerner

General Electric Lighting
1 River Road  Bldg 6-202
Schenectady, New York  12345
Attn:  William P. Thornton, Jr.

Huth Oil Services Company, Inc.
c/o John Kohler
8905 Lake Avenue
Cleveland, Ohio  44102



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 5
230 SOUTH DEARBORN ST.
CHICAGO, ILLINOIS 60604

5HS-12

REPLY TO THE ATTENTION OF:

OCT. 05 1990

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Re: Huth Oil Services Company Site

Dear Sir or Madam:

Enclosed please find a unilateral Administrative Order issued by the
U.S. Environmental Protection Agency under Section 106 of the Compre-
hensive Environmental Response, Compensation and Liability Act of 1980, as
amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C.
Section 9601, et seq.

Please note that it allows an opportunity for a conference if requested within
ten (10) calendar days after issuance of the Order, or if no conference is
requested, an opportunity to submit comments within fourteen (14) calendar
days of the Order.

If you have any questions regarding the Order, feel free to contact
John Breslin, Assistant Regional Counsel, at (312) 886-7165 or
Joseph Fredle, On-Scene Coordinator, at (216) 522-7260.

Sincerely yours,

David A. Ullrich, Director
Waste Management Division

Enclosure

cc:  Ken Schultz, Ohio Environmental Protection Agency

25EPA 0020

```
bcc:  Tom Pernell, ORC (5CS-TUB-3)
      John Breslin, ORC (5CS-TUB-7)
      Joseph Fredle, OSC, (5S-EDO)
      File copy
      Pamela Schafer, ESS (5HS-11)
      Mark Messersmith, ESS (5HS-12)
      Oliver Warnsley, RP-CRU (5HS-TUB-7)
       ADD/OSF Read
      EERB Read
      David Ullrich, 5H-12 (only if not signed by him)
      Tony Lesser, Public Affairs (5PA-14) w/out attachments
      Sheila Huff, Department of Interior
      Alice Corley, SETS (OS-505)
      Vince D'Aloia (5MFS-14)
      Tony Audia (5MFS-14)
      EERB Site File
```

25EPA 0021

# Exhibit B.

CONSULTING INVESTIGATORS INC.

FILE: Huth

DATE: November 20, 1991

INTERVIEW REPORT

INVEST. NO. Z/211

Continuing with our investigation, Investigator Z/211 departed the Independence, Ohio office and traveled to 5951 State Road, Route 303, Wakeman, Ohio to interview MR. JOHN OCKENGA, former Huth Oil Company employee. Mr. Ockenga was cooperative and stated substantially as follows:

In 1949 I worked with Hank LaChetta, owner of Hank's Oil Company. Hank's Oil Company was a home heating oil business. The company never dealt with waste oil. In a way I was a partner of Hank's in the business. I never paid into the business or formally became a partner. It was a verbal agreement between Henry and myself. We operated the business together until 1956. In 1956 I began operating the business on my own. The business name was changed to J & E Oil Company.

As with Hank's Oil Company, my business was strictly home heating oil. Hank's Oil Company used the property that Huth Oil Company was located on to store its trucks. In 1949 the property was owned by Columbia Oil Company. Several years later Ashland Oil Company bought the property.

The summer months in the home heating oil business were slow and I worked for George Huth making pickups and deliveries for him.

Over the years that I was at this property location I remember the following companies operating there:

o  Bronoco Solvents        Ashland Oil purchased this company.

o  There was a paint removing and distributiing company in the warehouse. This company had a paint removing process that operated by spraying the remover on a house and later washing it off with a hose. I remember a fellow by the name of Helper. I think he owned this paint removing company.

o  Ashland Oil Company was also located on the property.

I worked off and on for George Huth until 1967 or 1968. The following are people that I know worked for George Huth:

| James Sebesy | He picked up waste oil at most of the Cleveland area businesses. |
| Lou Fernandez | He was my brother-in-law. He worked in the yard and office. |
| Carl Stutzman | He made pickups all over the state and did road oiling. |

0010

CONFIDENTIAL
INFORMATION
MS3-0223

XXXIII-042

CONSULTING INVESTIGATORS INC

**FILE:** Huth

**DATE:** November 20, 1991

INTERVIEW REPORT
Page 2
INVEST. NO. Z/211

| | |
|---|---|
| John Starr | He brought in a lot of business accounts.  He made pickups. |
| Walter Robinson | He was a partner with George Huth in the business.  He died a long time ago. |
| Peter Belak | Made pickups. |
| Gordon Stutzman's | Made pickups and did road oiling. |

I sold my business in 1972 to Doug Zeman and then moved here from Cleveland.  Doug Zeman is now dead.

The following are companies I know George Huth to have done business with:

| | |
|---|---|
| General Electric | Pick up waste oil |
| Bendix-Westinghouse | Pick up waste oil |
| Ford | Pick up waste oil |
| Lubrizoil | Pick up grease oil |
| Chrysler | Think Huth picked up, not sure. |
| General Motors | Pick up waste oil |
| NASA | Pic. up jet fuel |
| Ohio Edison | Pick up waste oil |
| East Ohio Gas | Pic. up waste oil |
| Cleveland Hopkins Municipal Airport | Waste oil, jet fuel |
| Youngstown Municipal Airport | Waste oil, jet fuel |
| All Souls Cemetery | Waste oil |
| Alleghany Corp. | Waste oil |
| Allied Oil Co. | Waste oil |

0011

CONFIDENTIAL
INFORMATION
MS3-0224

XXXIII-043

ATTORNEY WORK PRODUCT

CONSULTING INVESTIGATORS INC.

FILE: Huth                                        INTERVIEW REPORT
                                                              Page 3
DATE: November 20. 1991                          INVEST. NO. Z/211

| | |
|---|---|
| Amalgamated Transit | Waste oil |
| American Ship Building Co. | Empty drums |
| Amoco | Empty drums |
| Arco Company | Empty drums |
| Arirod's Point | Road oiling |
| Artex | Waste oil |
| A. Shaw Company | I think Huth did business with them. |
| Ashtabula Extrusion Plant | Waste oil |
| Ashland Oil Company | Waste oil |
| Asphalt Driveway Co. | Sold oil |
| Associated Laboratories | Waste products |
| Atomic Fire | Extinguishing equipment, pick ups |
| Auckoe Industries | Pickups |
| Aurora School District | Road oiling, pick up waste oil |
| Aurora Deli Delite | Road oiling |
| Aurora Lake Park | Road oiling |
| Aurora Bd. of Education | Road oiling, pick ups, waste oil |
| Aurora, Village of | Road oiling |
| Austin Powder Co. | Road oiling |
| Auto Electric | Pickups, road oiling |
| Automatic Sprinklers | Pickups, road oiling |
| B.F. Goodrich | Pickups, road oiling |
| B & B Tire | Pickups, road oiling |
| B & B Auto Glass | Pickups |

0012

CONFIDENTIAL
INFORMATION
MS3-0225

XXXIII-044

CONSULTING INVESTIGATORS INC.

FILE: Huth

DATE: November 20, 1991

| | |
|---|---|
| Baldwin Wallace College | Fuel oil |
| Barber Motors, Inc. | Pickup, waste oil, road oiling |
| Ben Barron (Usher Oil) | Bought his oil |
| Beachwood, City of | Road oiling |
| Beacon Oak Farms | Road oiling |
| Bearings, Inc. | Pickups |
| Beck Sand & Gravel | Road oiling |
| Bedford Ford | Pickups |
| Bedford Motors | Pickups |
| Behner Plumbing | Pickups |
| Belak Tires (Peter Belak) | Sold tires to Huth |
| Belco Petroleum | Pickups, blended motor oil, out of business |
| Belle-Vernon | Dairy company, pickups |
| Berea, City of | Road oiling |
| Bessermer Cement | Road oiling |
| B. G. Construction | Road oiling |
| Birmingham Construction | Road oiling |
| Black & Decker | Pickups, waste oil |
| Blackwood High School | Road oiling |
| Bd. of Education/Cleveland | Pickups, waste oil |
| Bolden, Jesse | Road oiling |
| Borromea Seminary | Fuel oil |
| Boykins Trucking | Pickups, waste oil |
| Brainard Steel Division | Pickups, waste oil |

0013

520 COMMONWEALTH AVENUE • BOSTON, MASSACHUSETTS 02215 • (617) 236-4433

XXXIII-045

CONFIDENTIAL
INFORMATION
MS3-0226

CONSULTING INVESTIGATORS INC.

FILE: Huth

DATE: November 20, 1991

| | |
|---|---|
| Bricksville Bd. of Ed. | Road oiling, pickups, waste oil |
| Brimfield Marathon | Oil company, pickups |
| Broadview Lake | Road oiling |
| Browning Ferris | Pickups |
| Breslube Inc. | Pickups |
| Brunswick, City of | Road oiling |
| Brunswick Lake Park | Road oiling |
| Brunswick Lake | Road oiling |
| Brunswick Hill Farms | Road oiling |
| Buckeye Garment | Pickups |
| Buckeye Laboratories | Pickups |
| Byerlyte Corp. | Pickups |
| CABY Transportation | Pickups |
| Canton Forge | Pickups |
| Cantrell, Joyce | George's girlfriend, Action Oil |
| Cardinal Lake | Road oiling |
| Caro Swim Club | Road oiling |
| Carol Jane Lake | Road oiling |
| Carp | Carl Stutzman's nickname |
| Case Western Reserve | Road oiling, pickups |
| Case Western Reserve Univ. | Road oiling, pickups |
| Cadillac Motors | Pickups, waste oil |
| Castello Greenhouse | Fuel oil |
| CCC Highway | Pickups, waste oil |

0014

520 COMMONWEALTH AVENUE • BOSTON, MASSACHUSETTS 02215 • (617) 236-4433

CONFIDENTIAL
INFORMATION
MS3-0227

XXXIII-046

CONSULTING INVESTIGATORS INC

FILE: Huth

DATE: November 20, 1991

| | |
|---|---|
| CEI | Pickups, waste oil |
| Central Cadillac | Pickups, waste oil |
| Central Brass | Pickups |
| Central Excavating | Road oiling |
| Ceramic Tile & Drain Waterproofing | Pickups |
| Chagrin Valley Hunt | Road oiling |
| Charlestown Sand & Gravel | Road oiling |
| Chase Cooper and Brass | Pickups |
| Chrysler Tank Plant | Pickups |
| City Asphalt & Paving | Fuel oil, #4 |
| City Movers & Storage | Pickups |
| City Waste Oil Co. | Ray Todd, owner |
| Clack Trucks, E.R. | Pickups |
| Clark Equipment | Pickups |
| Clark Oil | Pickups |
| CLE Stamp Plant | Pickups |
| Cleveland Plain Dealer | Pickups, ink |
| Cleveland Cap Screw | Pickups |
| Cleveland Transit System | Pickups |
| Clev. Punch & Shear Co. | Pickups |
| Cleveland Trinidad | Delivered #4 |
| Cleveland Maintenance | Pickups |
| Cleveland Cliffs Iron | Road oiling |
| Cleveland Terminals | Pickups |

0015

520 COMMONWEALTH AVENUE • BOSTON, MASSACHUSETTS 02215 • (617) 236-4433

CONFIDENTIAL
INFORMATION
MS3-0228

XXXIII-047

CONSULTING INVESTIGATORS INC.

FILE: Huth

DATE: November 20, 1991

| | |
|---|---|
| Cleveland Boys School | Road oiling |
| Cleveland Builders Supply | Road oiling |
| Cleveland Engin | Pickups |
| ~~Cleveland, Bd. of Ed.~~ | ~~Pickups~~ SEE PAGE 4 |
| Cleveland Labs | Pickups |
| Coca-Cola Bottling Co. | Pickups and oil, on 40th & Superior Streets, Cleveland |
| Collins Equipment Co. | Road oiling |
| Columbia Gas of Ohio | Pickups |
| Columbia Schools, Bd.of Ed. | Road oiling, pickups |
| Commercial Shearing | Pickups |
| Commercial Truck Service | Pickups |
| Commercial Motorfreight | Pickups |
| Con Rail | Pickups |
| Cook Paving | Road oiling |
| Cooper Metallurgical | Pickups |
| Cooper Chev., Inc. | Pickups |
| Cooper Weld Steel | Pickups |
| Cowles Chemical Co. | Pickups |
| Custom Beverage | Pickups |
| Cuyahoga Greenhouse | Fuel oil |
| Cuyahoga Lime Co. | Road oiling |
| David L. George Greenhouse | Fuel oil |
| Demassimo, Joyce | George Huth's girlfriend, Action Oil |
| Detroit Pittsburgh | Trucking, pickups |

0016

CONFIDENTIAL
INFORMATION
MS3-0229

XXXIII-048

CONSULTING INVESTIGATORS INC.

**FILE: Huth**

**DATE: November 20, 1991**

INTERVIEW REPORT
Page 8
INVEST. NO. Z/211

| | |
|---|---|
| Diamond Shamrock | Pickups |
| Douglas Aircraft | Pickups |
| DuPont-DeNem-- | Pickups |
| Eaton Axle Div. | Pickups |
| Eaton Yale | Pickups |
| Electric Service Co. | Pickups |
| Electro Motor Div. | Pickups |
| Fleet-Wing Corp. | Oil company, pickups |
| Flexo Products Co. | Lube company, pickups |
| Fluid Transport, Inc. | Trucking, pickups |
| Formweld | Manufacturing company, pickups |
| Franklin Oil Co. | Pickup drums |
| Fruehauf Corp. | Trailer manufacturer, pickups |
| Gardwell Products/Safety | Pickups |
| Garfield Hgts. Busline | Pickups |
| Garfield Hgts. Power Line | Pi kups |
| Gateway Oxy-Weld | Pickups |
| General Electric | Pi kups |
| Gleasson Drive Inc. | Leasing company, pickups |
| Glidden Co. | Pickups |
| Globe Paper Co. | Road oiling |
| Goodall Rubber Co. | Pickups |
| Goodyear Service Stores | Pickups |
| Goulds Pumps | Pickups |

0017

520 COMMONWEALTH AVENUE • BOSTON, MASSACHUSETTS 02215 • (617) 236-4433

CONFIDENTIAL
INFORMATION
MS3-0230

XXXIII-049

CONSULTING INVESTIGATORS INC

FILE: Huth

DATE: November 20, 1991

| | |
|---|---|
| Grandview Raceway | Road oiling |
| Great Northern Shopping Ctr. | Road oiling |
| Great Lakes Carriers | Pickups |
| Gulf Oil | Pickups |
| Hanna Mining | Salt mining, West 3rd, road oiling |
| Helperizer Inc. | Betty and Ben Helper, paint removing company |
| Horvath, Mr. Steve | Road construction company, sold oil, Pickups |
| Illuminating Co. | CIE, pickups |
| Independent Towel | Pickups |
| Industrial Paper Products | Pickups |
| Inland Aluminum | Pickups |
| International Harvester | Pickups |
| International Salt Co. | Pickups |
| International Pipe&Ceramics | Pickups |
| Iron  Steel Transport | Pickups |
| Lake Erie Chemical Co. | Pickups |
| Lewis Research Center | Pickups |
| Lewis Flight Propulsion Labs | Pickups |
| Lincoln Electric | Pickups |
| Mentor Marina | Pickups |
| Midland Ross Corp. | Steel company, pickups |
| Napco Chemical Division | Pickups |
| National Distillers Chemical | Pickups |

.0018

520 COMMONWEALTH AVENUE • BOSTON, MASSACHUSETTS 02215 • (617) 236-4433

CONFIDENTIAL
INFORMATION
MS3-0231

CONSULTING INVESTIGATORS INC.

FILE: Huth

DATE: November 20, 1991

| | |
|---|---|
| National Copper&Smelting | Pickups |
| National Biscuit Co. | Pickups |
| Oakite Products | Pump backing, pickups |
| Ohio Transformer Co. | Pickups |
| Ohio Bronze Powder Co. | Pickups |
| Ohio Edison | Pickups |
| Ohio Machinery | Pickups |
| Ohio Bell | Pickups |
| Ohio Garment | Pickups |
| Parker Hannifan | Pickups |
| Penzoil | Pickups |
| Pepsi Cola | Pickups |
| Picker X-Ray | Pickups |
| Pittsburgh Testing Labs | Pickups |
| Portage Septic Tank | Road oiling |
| Powell Brakes Service | Pickups |
| PPG | Pickups |
| Railway Express | Trucking, pickups |
| Ralston Transport | Pickups |
| Reactive Metals | Special metals, pickups |
| Refiners Transport | Trucking, pickups |
| Regent Steel | Pickups |
| RKH Express | Trucking, pickups |
| Republic Power | Pickups |

0019

520 COMMONWEALTH AVENUE • BOSTON, MASSACHUSETTS 02215 • (617) 236-4433

CONFIDENTIAL
INFORMATION
MS3-0232

CONSULTING INVESTIGATORS INC.

ATTORNEY WORK PRODUCT

FILE: Muth

DATE: November 20, 1991

INTERVIEW REPORT
Page 11
INVEST. NO. Z/211

| | |
|---|---|
| Rockside Landfill | Road oiling |
| A.J. Ronyak, Inc. | Fuel oil, #4 |
| Ross Industries | Robert Ross, waste pickup, Rt. 82 Strongsville, OH |
| S.C. Wagenman Paint Store, Co. | Pickups |
| Sealtest | Pickups |
| Sears Roebuck | Pickups |
| Seaworld | Road oiling |
| Sinclair Refining | Pickups, Cleveland Flats |
| Sohio War. Lab | 49th St., Cleveland |
| Standard Slag | Oiling |
| Standard Transformer | Pickups |
| Superior Concrete | Sold oil |
| Swiss Laboratories | Pickups |
| Tallmadge Asphalt Grading | Fuel oil delivery |
| Texaco Co., Inc. | Pickup, all stations, before they moved out of state |
| Tinnerman Products, Inc. | West side, pickups |
| Trenco Mfgr. | Pickups |
| TRW Valve | Pickups |
| Tuff-Kote Dinol | Pickups |
| Tyroler Metal | Pickups |
| U.S. Steel | Pickups |
| Union Carbide | Pickups |
| Union Paper & Twine | Pickups |

0020

520 COMMONWEALTH AVENUE • BOSTON, MASSACHUSETTS 02215 • (617) 236-4433

CONFIDENTIAL
INFORMATION
MS3-0233

CONSULTING INVESTIGATORS INC.

FILE: Huth

DATE: November 20, 1991

INTERVIEW REPORT
Page 12
INVEST. NO. Z/211

| | |
|---|---|
| United Metal Fabricators | Pickups |
| United Parcel | Pickups |
| United Lubricant Co. | Pickups |
| Universal Oil | Processed special oils, pickups |
| Universal Joint | Pickups |
| Universal Valve & Fitting | Pickups |
| Valley Mould & Iron | Pickups |
| VanDorn Plastic Machinery | Pickups |
| W.H. Summers Rubber Co. | Made tubing, pickups |
| Wagenman Paint | Pickups |
| Walker China Co. | Pickups |
| Warner & Svasey | Pickups |
| Welker-McKee | Pickups |
| Westinghouse Electric Corp. | Pickups |
| Wipex Industrial Towels | Pickups |
| World Publishing Co. | Magazine publishers, pickups |
| Youngstown Steel Door | Pickups |

I do not know what specific material was picked up at most of these locations because other drivers made the pickups.

Huth Oil Company also picked up waste oil from railroads. Pennsylvania Railroad and B & O Railroad are two with which I am sure Huth did business. The Pennsylvania Railroad had a roundhouse under the Kinsman Street Bridge in Cleveland where Huth picked up waste oil.

Action Oil Company was a company that operated on the property. That was run by George Huth and his girlfriend, Joyce Nichols. They did not sell home heating oil. They sold heavy waste fuel oil.

0021

520 COMMONWEALTH AVENUE • BOSTON, MASSACHUSETTS 02215 • (617) 236-4433

CONFIDENTIAL
INFORMATION
MS3-0234

XXXIII-053

CONSULTING INVESTIGATORS, INC.

FILE: Ruth

DATE: November 20, 1991

INTERVIEW REPORT
Page 13
INVEST. NO. Z/211

Bronoco Solvents operated on the property.  They dealt with solvents and there were a lot.  There were a lot of drums on the property from them.  They and Ashland were the only two companies that used the railroad line, on the property, to receive shipments and ship out products.

0022

520 COMMONWEALTH AVENUE • BOSTON, MASSACHUSETTS 02215 • (617) 236-4433

CONFIDENTIAL
INFORMATION
MS3-0235