# Exhibit E.

100 Main Street
P. O. Box 1525
Dover, New Hampshire 03820-1525
Telephone: (603) 749-2600



C

August 30, 1994

· Alexander & Alexander
111 Market Place
Baltimore, MD 21202

ATTN: Michael D. Margiotta, Assistant Vice President

RE: USEPA(Huth Oil Services) - Black & Decker Manufacturing Co. P033-(new)

Dear Mr. Margiotta:

This will acknowledge your notification to Liberty Mutual of Black & Decker's potential involvement with contamination discovered at the above-captioned site.  In accordance with our company's procedure, we will initiate an investigation into the nature of this claim and the application of coverage.

## INFORMATION REQUESTED:

In order for us to begin our evaluation of this claim, we request that you supply certain information to us.  If you have responded to an information request from a regulatory agency or answered pleadings in this litigation, please forward a copy of your response.

If the response does not contain the following information, please include it with a copy of the response that was sent to the regulator or the court:

1. Shipping origin of the waste.

2. The exact waste product(s) generated from the Black & Decker facility and location of the facility in Ohio.

3. The method of shipment:  i.e., drum or bulk form?  If in drum, how were they sealed?

4. Whether a transporter was involved.  If so, was there a contract?  Please submit a copy.

5. The exact quantity of waste shipped.

6. The dates of each shipment.

Liberty Mutual Insurance Group/Boston
Equal Opportunity Employer



XXXIII-238

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037775

Page 2
August 30, 1994

7.     Why the site was chosen?  Dates of site inspections by any personnel from your company.

8.     How waste was disposed of before and after this site was used.

9.     Any information you have regarding this site, including its background, regulatory history, results of any testing, and if any remediation has taken place.

10.   Advise if there have been any state, federal, or other environmental violations issued to your company involving this site.

11.   Black & Decker was notified of this claim on April 6, 1994.  Black & Decker and/or its broker did not notify Liberty Mutual of this claim until August 16, 1994.  Please explain the reasons for this delay.

We presently lack sufficient information to comment specifically on how your policies may relate to the particular coverage issues present in environmental claims of this nature.  Accordingly, we reserve all of our rights under the applicable law and under all policies of insurance issued to Black & Decker by Liberty Mutual and our continued investigation into this matter is not to be construed as a waiver of these rights.

Furthermore, should we determine that Liberty Mutual's policies afford coverage in the instant matter, we reserve our right to pay only those rates for attorney services, and other defense costs, that are reasonable and necessary, incurred after the date of your notice to Liberty Mutual on August 16, 1994.

We will be in further contact with you once we have received and reviewed your responses to the iinformation requested. We will review the information as well as our records of your client's policies and will advise you in more detail of our coverage position once this has been completed. In the interim, please keep us fully informed of any further developments.

Very truly yours,
LIBERTY MUTUAL INSURANCE COMPANY

Kim A. Olson
Environmental Claim Specialist

XXXIII-239

PRIVILEGED AND CONFIDENTIAL B&D MA     LM     0037776

# Exhibit F.



Alexander & Alexander Inc.
111 Market Place
Baltimore, Maryland 21202
Telephone 410 547-2800
FAX 410 547-2914

November 23, 1994

The Interested Underwriters:

RE:    Insured:      Black & Decker
       Claimant:     USEPA
       Location:     Huth Oil Site – Cleveland, OH          *633 - 18438c - 01*

Ladies/Gentlemen:

Enclosed is information provided by counsel advising of the status of the above captioned loss which was previously reported to your offices.

Pending specific requests for further information, our file will remain open and further materials will be forwarded promptly upon receipt.  Thank you for your attention in this matter.

If questions arise on this material, please contact this office.

Respectfully,

Michael D. Margiotta, CPCU
Assistant Vice President

MDM

Enclosure

cc:    B.52

PRIVILEGED  AND  CONFIDENTIAL  B&D MA      LM      0037751

LAW OFFICES

**MILES & STOCKBRIDGE**

A PROFESSIONAL CORPORATION

1O LIGHT STREET

BALTIMORE, MARYLAND 21202-1487

TELEPHONE 410-727-6464

FAX 410-385-3700

300 ACADEMY STREET
CAMBRIDGE, MD 21613-1865

101 BAY STREET
EASTON, MD 21601-2718

11350 RANDOM HILLS ROAD
FAIRFAX, VA 22030-7429

30 WEST PATRICK STREET
FREDERICK, MD 21701-6903

22 WEST JEFFERSON STREET
ROCKVILLE, MD 20850-4286

600 WASHINGTON AVENUE
TOWSON, MD 21204-0965

1450 G STREET, N.W.
WASHINGTON, D.C. 20005-2001

MARIAN C. HWANG
410-385-3604

November 17, 1994

Michael D. Margiotta, CPCU
Assistant Vice President
Alexander & Alexander
111 Market Place
Baltimore, MD 21202

RE:  U.S. EPA (Huth Oil Services) - Black & Decker
Manufacturing Company, PO33

Dear Mr. Margiotta:

On behalf of Black & Decker, I am responding to Liberty Mutual's letter, dated August 30, 1994, to Alexander & Alexander from Kim A. Olson.  This letter was received by our office on October 13, 1994, and response thereto was delayed pending the filing of Black & Decker's responsive pleading to the Complaint, a copy of which is attached hereto.  No other pleadings or responses to information requests have been submitted by Black & Decker.

In response to Liberty Mutual's request for information concerning transporters, quantity of waste shipped, nature of waste generated and shipping origin of the waste, we are unable to provide any definite information.  Black & Decker has no records indicating that it ever delivered materials to the Huth Oil site and, to date, Black & Decker has received only limited information from the Huth Oil group.  As previously indicated by letters, dated July 1, 1994 and July 18, 1994, from Thomas E. Lynch, III, two (2) truck drivers purportedly associated with the Huth Oil site allege that they picked up waste oil from an unidentified Black & Decker facility.  One truck driver was unable to identify the location of the alleged Black & Decker facility; and the other driver recalled the Black & Decker location in Canton, Ohio.  Black & Decker has never owned or operated any plant or location in Canton, Ohio.

The interview summaries of these truck drivers differs significantly from each other.  For instance, one truck driver, John Ockenga, stated that he could not recall the location of the Black & Decker facility, but recalled that "pick-ups occurred at least once a month, 300-400 gallons . . . for no less than 5 and no more than 12 years."  In contrast, another driver, Carl Stutzman, indicates that Black & Decker's facility was in Canton, Ohio and

NOV 18 1994

ALEXANDER & ALEXANDER INC
CLAIMS DEPARTMENT

XXXIII-241



PRIVILEGED AND CONFIDENTIAL B&D MA     LM     0037752

MILES & STOCKBRIDGE

Michael D. Margiotta
November 17, 1994
Page 2

that pickups occurred between 15 to 20 years, with approximately 600-1,000 gallons of waste picked up per stop. The interview summary for Stutzman provides no information regarding frequency of stops. Ockenga further states that the Black & Decker location "generated all kinds of oil," and later references waste oil and chemical products. Carl Stutzman alleges that Black & Decker's Canton, Ohio plant "generated waste oils, chemicals and all kinds of liquid waste material."

If you have any questions with regard to the above, please call me.

Very truly yours,

Marian C. Hwang

MCH:pls
cc: Linda H. Biagioni

RECEIVED

NOV 1 8 1994

ALEXANDER & ALEXANDER INC.
CLAIMS DEPARTMENT

XXXIII-242

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037753

C

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CENTERIOR SERVICE COMPANY, and GENERAL ELECTRIC COMPANY,  )<br><br>Plaintiffs,  )<br><br>vs.  )<br><br>ALLIED SIGNAL INC., BLACK & DECKER CORPORATION, and ROCKWELL INTERNATIONAL CORPORATION,  )<br><br>Defendants.  ) | Civil Action 1:94CV 1590<br>Judge Aldrich |

## BLACK & DECKER CORPORATION'S MOTION TO DISMISS

Defendant, The Black & Decker Corporation ("Black & Decker"), by and through its undersigned attorneys, pursuant to Federal Rule of Civil Procedure 12(b)(6), submits this Motion to Dismiss the Complaint of Centerior Service Company and General Electric Company (collectively, "Plaintiffs"), and Memorandum in Support thereof, on the grounds that it fails to state a claim upon which relief may be granted.

Under CERCLA's liability scheme, Plaintiffs' sole cause of action, if any, against the defendants is for contribution under § 113 of CERCLA. Because Plaintiffs have not pursued a contribution action under § 113, but rather have styled their claim as a cost recovery action under § 107 of CERCLA, plaintiffs claim must be dismissed. For reasons further described in the attached Memorandum in Support of Black & Decker's Motion, § 107 cost recovery actions are availab.. only to entiti....

RECEIVED

NOV 18 1994

ALEXANDER & ALEXANDER INC.

XXXIII-243

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037754

who are not themselves "liable persons," as defined by CERCLA.

Hence, no claim can be pursued by Plaintiffs under this section,

and Plaintiffs' complaint should be dismissed.

Thomas E. Lynch, III
Marian C. Hwang
Scott A. Harvey
MILES & STOCKBRIDGE
10 Light Street
Baltimore, Maryland  21202
(410) 385-3604
Attorney for Defendant,
The Black & Decker Corporation


Sharon G. Newman
Kahn, Kleinman, Yanowitz, & Arnson
The Tower at Erieview, Suite 2600
Cleveland, Ohio 44114-1824
(216) 696-3311
Bar No. 0 34266
Local Counsel for The Black
& Decker Corporation

2

XXXIII-244

RECEIVED

NOV 1 8 1994

ALEXANDER & ALEXANDER INC.
CLAIMS DEPARTMENT

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037755

## CERTIFICATE OF SERVICE

I hereby certify that in this _____ day of October, 1994, a copy of the foregoing Black & Decker Corporation's Motion to Dismiss, with accompanying Memorandum in Support thereof, was mailed, first class mail, postage prepaid, to Steven D. Bell, Ulmer & Berne, Bond Court Building, 1300 East Ninth Street, Suite 900, Cleveland, Ohio 44114-1583; Gary W. Johnson, Esq., Allied Signal, Inc., c/o Weston, Hurd, Fallon, Paisley & Howley, 2500 Terminal Tower, 50 Public Square, Cleveland, Ohio 44113; and Steven M. O'Bryan, Esq., Rockwell International Corporation, c/o Kelly, McCann & Livingstone, BP America Bldg. - 35th Floor, 200 Public Square, Cleveland, Ohio 44114-2302.


_____
Sharon G. Newman
Kahn, Kleinman, Yanowitz, &
Arnson
Local Counsel for The Black
& Decker Corporation

oct/memorand.bkd
10/5/94pls

3

XXXIII-245

RECEIVED

NOV 1 8 1994

ALEXANDER & ALEXANDER INC.
CLAIMS DEPARTMENT

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037756

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CENTERIOR SERVICE COMPANY,<br> and GENERAL ELECTRIC COMPANY,<br><br>            Plaintiffs,<br><br>      vs.<br><br>ALLIED SIGNAL INC.,<br> BLACK & DECKER CORPORATION,<br> and ROCKWELL INTERNATIONAL<br>CORPORATION,<br><br>            Defendants. | Civil Action 1:94CV 1590<br>Judge Aldrich |

MEMORANDUM IN SUPPORT OF DEFENDANT
<u>BLACK & DECKER CORPORATION'S MOTION TO DISMISS</u>

Defendant The Black & Decker Corporation ("Black & Decker"),
by and through its undersigned attorneys, pursuant to Federal
Rule of Civil Procedure 12(b)(6) submits this Memorandum in
Support of its Motion to Dismiss the Complaint of Centerior
Service Company and General Electric Company (collectively,
"Plaintiffs") on the grounds that it fails to state a claim upon
which relief may be granted.


I.    <u>Introduction</u>

Plaintiffs have filed a Complaint requesting the Court to
order Defendant to pay all costs Plaintiff has incurred and will
incur cleaning up a site allegedly contaminated with hazardous
substances.  Plaintiff bases its Complaint exclusively on § 107
of the Comprehensive Environmental Response, Compensation, and

XXXIII-246

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037757

Liability Act ("CERCLA"), which does not provide Plaintiff with a cause of action. Plaintiffs' § 107 claim seeks reimbursement of all plaintiffs' costs. However, claims based on § 107 (hereinafter "cost recovery actions" or "§ 107 claims") are available only to plaintiffs who are not themselves liable for cleanup costs as "responsible parties" under CERCLA § 107(a). The Complaint establishes that Plaintiffs are "responsible parties." Therefore, Plaintiffs may not assert a cost recovery action.

Plaintiffs are "responsible persons," as defined by § 107(a) of CERCLA, and, accordingly, were the recipients of an administrative order (the "Order"), a copy of which is attached as Exhibit A,[1] issued in October 1990 by EPA pursuant to § 106(a) of CERCLA. Complaint at 14. In compliance with the Order, the Plaintiffs allegedly incurred costs to remove and dispose of hazardous substances located at a former waste oil reclamation facility. Plaintiffs now have sued Defendants seeking reimbursement of costs allegedly incurred, and a declaration as to their rights for future costs.

Under CERCLA's liability scheme, Plaintiffs' sole cause of action, if any, against the defendants is for contribution under § 113 of CERCLA. Because Plaintiffs have not pursued a contribution action under § 113, but rather have styled their

---

[1]To the extent Black & Decker attaches a copy of the "Order," which is referenced in the Complaint, it does so pursuant to either Rule 12(b)(6) or, alternatively, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

RECEIVED
NOV 18 1994
ALEXANDER & ALEXANDER INC.
CLAIMS DEPARTMENT

XXXIII-247

PRIVILEGED AND CONFIDENTIAL B&D MA      LM      0037758

claim as a cost recovery action under § 107 of CERCLA, Plaintiffs' claim must be dismissed. For reasons further described below, § 107 cost recovery actions are available only to entities or persons who are not themselves "liable persons," as defined by CERCLA. Hence, no claim can be pursued by Plaintiffs under this section.

This distinction recently was addressed by the U.S. Court of Appeals for the First Circuit in <u>United Technologies Corp. v. Browning-Ferris, Industries, Inc.</u>, 1194 U.S. App. Lexis 22269 (Aug. 19, 1994, as corrected Sept. 12, 1994), a copy of which is attached at Exhibit B, which affirmed the trial court's dismissal of the plaintiff's § 107 cost recovery action. While the <u>United Technologies</u> case also involved the interpretation of applicable statute of limitations, the threshold issue and the "sole question presented on appeal" was 'whether appellants action was an action for cost recovery or one for contribution," the very issue now presented by this motion. <u>Id</u>. at * 7.

By applying well accepted principles of statutory construction, the First Circuit in <u>United Technologies</u> concluded that CERCLA, as amended, creates "two different kinds of legal actions," which enable parties to "recoup some or all of the costs associated with environmental damages": § 107 cost recovery actions and § 113 contribution actions. <u>Id</u>. These two actions are separate and distinct remedies, which do not overlap and do not provide plaintiffs alternative theories of recovery.

RECEIVED

NOV 18 1994

ALEXANDER & ALEXANDER INC.
CLAIMS DEPARTMENT

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037759

Cost recovery actions are available exclusively to innocent persons, such as a state or government, which voluntarily incur costs cleaning up a site, and are not "liable parties," such as a hazardous waste generator or owner of a Superfund site. In contrast, the right to contribution under CERCLA § 113(f)(1) is available exclusively to plaintiffs who are "liable" parties. The First Circuit reasoned that § 107 cost recovery actions and § 113 contribution actions have entirely different and separate statutes of limitations, liability schemes and congressional purposes. If a party could elect one action, such as a § 107 cost recovery action, over a § 113 contribution action, the legislative purposes and objectives of § 113, with its concomitant limitations periods, allocation schemes and contribution protection provisions, would be eviscerated.

II. <u>Facts</u>

Based on the U.S. Environmental Protection Agency's ("EPA") investigations of a former waste oil reclamation facility operated by the Huth Oil Services Company at 2891-2913 East 83rd Street, Cleveland, Ohio, EPA issued an Order in October of 1990 to Plaintiffs, among others, pursuant to § 106(a) of CERCLA, 42 U.S.C. § 9606(a). <u>Complaint</u> at ¶¶ 9-14. In response to this Order, Plaintiffs allegedly performed certain response actions required by EPA to address the conditions found at the site. <u>Id</u>. The Order determined that Plaintiffs were liable or responsible parties under § 107(a) of CERCLA. Indeed, as a matter of law,

4

RECEIVED

NOV 1 8 1994

ALEXANDER & ALEXANDER INC.
CLAIMS DEPARTMENT

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037760

persons subject to a § 106(a) order are "liable" parties, as defined by § 107(a) of CERCLA.[2]  See Transtech Industries, Inc. v. A&Z Septic Clean, 798 F.Supp. 1079, 1087 (D. N.J. 1992).

Accordingly, Plaintiffs cannot seriously contend that they are not themselves "liable" persons, as defined by § 107(a) of CERCLA.

III. Legal Analysis

A.  Applicable Rule 12(b)(6) Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs motions to dismiss for the failure to state a claim upon which relief can be granted.  It has long been established that the purpose of a motion to dismiss for failure to state a claim

---

[2]Persons liable under § 107(a) of CERCLA include, among others,

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owner or possessed by such person, by any other party or entity, at any facility or incineration vessel owner or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . . .

42 U.S.C. § 9607(a)(1)-(4).

RECEIVED

NOV 1 8 1994

ALEXANDER & ALEXANDER INC.
CLAIMS DEPARTMENT

5

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037761

is to test the legal sufficiency of the complaint. <u>See</u> <u>Westlake</u> <u>v. Lucas</u>, 537 F.2d 857, 858 (6th Cir. 1976).

When reviewing the legal sufficiency of a complaint, the court shall construe the complaint in the light most favorable to the plaintiff and will assume, for purposes of the motion, that the allegations are true. A complaint will be dismissed under Rule 12(b)(6) where it appears that plaintiff can prove no facts in support of the claim, which would entitle plaintiff to relief. <u>Haines v. Kerner</u>, 404 U.S. 519, 521, 92 S. Ct. 594, 596 (1972).

B.    Applicable CERCLA Provisions.    The text of the applicable CERCLA provisions that are at issue in this Motion are set forth below.

1.    <u>§ 107 Cost Recovery Actions</u> - Section 107's cost recovery provision provides that certain persons as defined in § 107(a), shall be liable for, among other things, "any other necessary costs of response incurred by any other person consistent with the national contingency plan."

2.    <u>§ 113 Contribution Actions</u> - In contrast, § 113(f)(1)'s contribution provisions provide that

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, . . . In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate . . .

C.    Differences Between § 107 and § 113 Actions - Each of these causes of action brought under § 107 or § 113 have separate

6

XXXIII-251

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037762

and distinct limitations periods, liability schemes, and legislative objectives. Thus, when examining claims brought under these distinct provisions, the First Circuit was guided by the basic tenet of statutory construction, _i.e._, that courts must strive to give effect to each subsection, phrase, and word contained in a statute. _See_ _United Techs. Corp. v. Browning-Ferris Indus._ (citing _United States v. Nordic Village, Inc._, 112 S.Ct. 1011, 1015 (1992)). In _United Technologies_, the court recognized that allowing Plaintiffs, who are themselves defined as liable persons under § 107(a) of CERCLA, to pursue a § 107 cost recovery claim would contravene this basic principle by nullifying and eviscerating important elements of a § 113 contribution action.

> 1.   Sections 107's and 113's Differing Limitations Schemes

Section 107 and § 113 have different limitations periods. Pursuant to § 113(g) of CERCLA, a contribution action under § 113 must be commenced generally no more than three years after the date of judgment in any action for the recovery of costs or damages, or the date of an administrative order relating to de minimis settlements or cost recovery settlements.

In contrast, a § 107 cost recovery action must be brought within three years after completion of the removal action, or within six years after initiation of physical onsite construction of the remedial action, with certain limited exceptions.

With respect to cost recovery actions, the First Circuit concluded that a § 107 cost recovery action "addresses actions

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037763

brought by innocent parties that have undertaken clean-ups", such as the federal, state or local government. 1994 U.S. App. Lexis 22269, * 12. Thus, the Court surmised that Congress intended to provide innocent parties with lengthier statute of limitations, when it observed the following:

> this reading suits especially well with the language of 42 U.S.C. § 9613(g)(2), which concerns actions for "recovery of the costs." That phrase, reiterative of the Section heading, Actions for recovery of costs, suggests full recovery; and it is sensible to assume that Congress intended only innocent parties -- who were themselves not liable -- to be permitted to recoup the whole of their expenditure. By contrast, 42 U.S.C. § 9613(g)(3) allows a "non-innocent" party (i.e., a party who himself is liable) only to seek recoupment of that portion of his expenditures which exceeds his pro rata share of the overall liability -- in other words, to seek contribution rather than complete indemnity. The statutory language thus suggests that cost recovery and contribution actions are distinct and do not overlap.

Id. at * 13.

As noted by the United Technologies court, if all parties could assert a § 107 action, then the lengthier statute of limitations would always apply, thereby subsuming the shorter limitations period under § 113. The First Circuit concluded that Congress did not intend to do such violence and, therefore, that § 107 and § 113 must be read to create separate and distinct remedies.

    2.    Section 113's Contribution Protection Feature

    Another legislative goal of CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"),

8

XXXIII-253

PRIVILEGED AND CONFIDENTIAL B&D MA      LM      0037764

Pub. L. No. 99-499, is to encourage responsible party settlements with the government in order to avoid litigation and to expedite cleanups.  To further this goal, SARA enacted § 113(f)(2), which provides that responsible parties, who settle with the government in an administrative or judicially approved settlement, shall be entitled to full contribution protection.  The section provides, in pertinent part, that

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement.

42 U.S.C. § 9613(f)(1).

CERCLA's contribution protection provision was enacted by Congress to provide EPA with the necessary tools to achieve prompt cleanups.  Id. (citing U.S. v. Cannons Engineering Corp., 899 F.2d 79, 90-91 (1st Cir. 1990)).  By enacting § 113(f)(2), Congress sought to advance this goal by encouraging potentially responsible parties to settle with the government, rather than contesting liability for cleanup costs with protracted litigation.  Id.  Because only the amount of the settlement(s), not the pro rata shares attributable to settling party(ies), is subtracted from the aggregate liability of nonsettling parties, § 113(f)(2) envisions that nonsettling parties will risk incurring disproportionate liability.  Id.  The risk of disproportionate liability encourages parties to settle, pay a finite amount of clean-up costs, and protect themselves from contribution claims asserted by non-settling parties.  Id.

9

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037765

(citing <u>Cannons Engineering</u>, 899 F.2d at 92; H.R. Rep. No. 253, supra U.S.C.C.A.N. at 2862).

As noted by the First Circuit in <u>United Technologies</u> at *24-26, if courts allowed responsible parties to maintain cost recovery actions, non-settling parties could easily undermine and avoid § 113(f)(2) a contribution protection by allowing non-settling parties to pursue cost recovery actions against a settling party.  The First Circuit thus cautioned that allowing responsible parties to proceed in this manner would nullify the incentives to settle that Congress attempted to create through § 113(f)(2).

       3.    Sections 107's and 113's Differing Liability Schemes.

Similarly, in a § 107 cost recovery action, CERCLA makes responsible parties "liable for . . . <u>all</u> <u>cost</u> of removal or <u>remedial</u> action incurred by [Federal and State governments or Indian tribes]" and "any other necessary costs of response incurred by any other person consistent with the national contingency plan. . ."  CERCLA § 107(a)(4)(A)-(B); 42 U.S.C. § 9607(a)(4)(A)-(B).  Section 107 contains no express mechanism to allocate partial shares of liability among responsible parties.

In contrast, § 113(f)(1), enacted in 1986 as an amendment to CERCLA,[3] sets up a system to allocate liability shares among

_____

[3]Before 1986, CERCLA did not expressly authorize responsible parties to sue each other for cleanup costs that exceeded there ratable shares.  Read literally, CERCLA created a system where the Environmental Protection Agency ("EPA") could pursue a cost

10

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037766

responsible parties.  It provides, in pertinent part, that "any person may seek contribution from any other person who is liable or potentially liable under § 107(a) . . . In resolving contribution claims, [courts] may allocate response costs among liable parties using such equitable factors as [they determine] are appropriate . . ."  42 U.S.C. § 9613(f)(1).

When the First Circuit examined this distinction between § 107 and § 113, it concluded that when Congress enacted § 113, it ascribed to the term "contribution" "a traditional meaning," i.e., "a claim 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make.' " Id. at * 12 (citing Akzo Coatings, Inc. v. Aigner Corp., ___ F.3d ___ (7th Cir. 1994) [1994 U.S. App. Lexis 17028 at * 5.]

---

recovery action and obtain a judgment of joint and several liability against one responsible party.  Once a court imposed judgement, CERCLA did not expressly provide that party with a right of contribution against other responsible and potentially responsible parties.  Interpreting CERCLA literally created two problems.  First, it unfairly saddled responsible parties with excessive liability.  Second, the absence of contribution encouraged defendants to invest massive resources contesting cost recovery actions to avoid joint and several liability.  To mitigate the unfairness of joint and several liability and encourage settlements, courts in most jurisdictions interpreted CERCLA to create an implied right of contribution among responsible parties.  See United Techs. Corp. v. Browning-Ferris Indus. at *15 (citing O'Neil v. Picillo, 883 F.2d 176, 179 (1st Cir. 1989), Mardan Corp. v. C.G.F. Music, Ltd., 804 F.2d 1454, 1457 n.3 (9th Cir. 1986)).  After Congress amended CERCLA and added § 113(f)(2), it was no longer necessary to imply a right of contribution in § 107 actions.

11

XXXIII-256

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037767

Accordingly, to allow "responsible parties" to assert claims under § 107, instead of § 113, would nullify the mechanism for allocating shares among responsible parties established by Congress at § 113(f)(1), which this Court should not countenance.

## IV.    Conclusions

Because Plaintiffs are responsible parties, they may not maintain this action brought solely as a cost recovery action under § 107. <u>Complaint</u> at Paragraph 1. Accordingly, this Court should dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Thomas E. Lynch, III
Marian C. Hwang
Scott N. Harvey
MILES & STOCKBRIDGE
10 Light Street
Baltimore, Maryland  21202
(410) 385-3604
Attorney for Defendant,
The Black & Decker Corporation

Sharon G. Newman
Kahn, Kleinman, Yanowitz, & Arnson
The Tower at Erieview, Suite 2600
Cleveland, Ohio 44114-1824
(216) 696-3311
Bar No. 0054266
Counsel for The Black
& Decker Corporation

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037768

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CENTERIOR SERVICE COMPANY,                    )
 and GENERAL ELECTRIC COMPANY,                )
                                              )
                                              )
                                              )
           Plaintiffs,                        )
                                              )          Civil Action 1:94CV 1590
           vs.                                )          Judge Aldrich
                                              )
ALLIED SIGNAL INC.,                           )
 BLACK & DECKER CORPORATION,                  )
 and ROCKWELL INTERNATIONAL                   )
 CORPORATION,                                 )
                                              )
           Defendants.                        )
                                              )

O R D E R

Upon consideration of Black & Decker Corporation's Motion to

Dismiss, with accompanying Memorandum of Law, and all opposing

Memoranda thereto;

IT IS THIS _____ day of _____, 19___, by the United

States District Court for the District of Ohio, Eastern Division;

ORDERED, that Black & Decker Corporation's Motion is

granted, and that the claims filed by Plaintiffs, Centerior

Service Company and General Electric Company, are hereby

dismissed.

_____
Judge Ann Aldrich

XXXIII-258

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037769

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CENTERIOR SERVICE COMPANY,<br> and GENERAL ELECTRIC COMPANY,<br><br>               Plaintiffs,<br><br>          vs.<br><br>ALLIED SIGNAL INC.,<br> BLACK & DECKER CORPORATION,<br> and ROCKWELL INTERNATIONAL<br> CORPORATION,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action 1:94CV 1590<br>)   Judge Aldrich<br>)<br>)<br>)   AFFIDAVIT IN SUPPORT OF<br>)   MOTION TO PRACTICE PRO<br>)   HAEC VICE<br>)<br>)<br>) |

STATE OF MARYLAND:    )
                      )    SS:
COUNTY OF BALTIMORE   )

   1.   I, Marian C. Hwang, am more than twenty-one years of age
and am competent to make this affidavit.

   2.   I am presently a principal owner with the law office of
Miles & Stockbridge, and have held this position for the past two
years.

   3.   I have been engaged by Black & Decker Corporation (Black
& Decker) to serve as defense counsel in the above-captioned
litigation.

   4.   I am a 1984 graduate of the Georgetown University Law
Center School of Law, and am a member in good standing of the State
of Maryland bar.  I am admitted to practice in the state courts of
Maryland.

   5.   I make this motion to practice pro haec vice pursuant to
Local Rule 1:5.1(h) of the Local Rules of the U.S. District Court
for the Northern District of Ohio so that I can assist Black &
Decker in its defense of this case.  I believe that by working
closely with Black & Decker's local counsel I can assist in the
just resolution of this controversy.

XXXIII-259

PRIVILEGED AND CONFIDENTIAL B&D MA     LM     0037770

6.  If admitted, I will conduct myself in accordance with this court's local rules and the highest standards of legal ethics.

_____
Marian C. Hwang


FURTHER, AFFIANT SAYETH NAUGHT.

On the 5th day of October, 1994, before me personally appeared Marian C. Hwang, known to me to be the person executing the foregoing, who upon her oath did declare the foregoing to be true and correct to the best of her knowledge and belief.

_____
Notary

Dec. 1st, 1994
_____
Date Commission Expires

(SEAL)

2

XXXIII-260

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037771

# Exhibit G.

**LIBERTY MUTUAL.**

Liberty Mutual Group

100 Main Street
P.O. 1525
Dover, New Hampshire 03820-1525
Telephone: (603) 749-2600

November 6, 1995

Certified Mail - Return Receipt Requested

Alexander & Alexander
111 Market Place
Baltimore, MD  21202

ATTN:  Michael D. Margiotta, Assistant Vice President

RE:    USEPA (Huth Oil) - Black & Decker  P033-184380-01

Dear Mr. Margiotta:

Liberty Mutual has conducted an investigation into this claim. This letter is further to our letter dated August 30, 1994 and will outline our coverage denial.

<u>SITE HISTORY:</u>

From 1938 to 1990, the Huth Oil Services Company operated a waste oil reclamation facility on two and a half acres at 2891 East 83rd Street in Cleveland, Ohio. The company was established by George Huth who oversaw operations at the site until his death in 1990. The land occupying the site was previously owned by Ashland Oil Company who rented it to Mr. Huth until he purchased the site in 1983. The company accepted a variety of waste oils and other substances which it blended for fuels and dust suppressants.

From 1983 to 1989, the USEPA conducted a series of investigations and assessments of environmental conditions at the site. The 1983 inspections included sampling of the content of eleven tanks on-site, disclosing the presence of PCBs. The 1985 inspections found leaking oil tanks. Testing of that leaking oil again revealed PCBs.

On August 19, 1988, the USEPA Emergency Response Section requested the Technical Assistance Team (TAT) to perform a site assessment. TAT collected fourteen samples for PCB analysis which indicated the presence of elevated levels of PCBs in on-site waste/sludge and soil (as high as 560 ppm). The sampling result indicated a localized PCB problem. Significant off-site migration did not appear to have occurred.

On October 5, 1990, the USEPA issued a Unilateral Administrative Order pursuant to Section 106 of CERCLA to Huth Oil Services Company, Ashland Chemical Company, The General Electric Company and the Cleveland Electric Illuminating Company. The order required them to perform a Removal Action of PCBs. From November 1990 until October 1992, a removal action was completed. Following the removal, a cap was installed over a portion of the site. Institutional controls have been initiated to maintain the integrity of the cap.

By sample analysis, contamination was first discovered on August 19, 1988.

<u>POLICYHOLDER INVOLVEMENT:</u>

XXXIII-261

Facing the Issues That Face Our Customers

PRIVILEGED AND CONFIDENTIAL  B&D MA    LM    0037697

Page 2
November 6, 1995

Black & Decker was formally notified by letter dated April 6, 1994 from the Huth Oil PRP group that it was considered a PRP. The letter purportedly requested voluntary participation with the group or Black & Decker would be enjoined in the litigation. The letter included a receipts ledger sheet from Huth Oil that reveals an unknown Black & Decker facility paid Huth Oil $300 on January 20, 1970. According to counsel for Black & Decker, former Huth Oil truck drivers have testified that they picked up waste oil at a Black & Decker facility in Ohio and delivered it to this site. Black & Decker appeared on the PRP list of tier assignments in Tier IV, which is a generator assigned 50,000 to 249,999 gallons of waste. That list was published in March 1994.

Black & Decker was later named as a defendant in the complaint, <u>Centerior Service Company, et al vs. Allied Signal, et al</u>, filed in the U.S. District Court for the Northern District of Ohio, Eastern District, case #CV 1590. The complaint seeks cost recovery under section 107 of the Comprehensive Environmental Recovery, Compensation and Liability Act (CERCLA). Liberty Mutual recently received a copy of the complaint served on Black & Decker. However, the summons for this complaint was not included.

<u>COVERAGE:</u>

Liberty Mutual issued comprehensive general liability (CGL) and umbrella excess liability (UEL) policies to Black & Decker Corporation. We have located CGL policies from July 1, 1970 to July 1, 1979 and UEL policies from July 1, 1970 to July 1, 1974 and July 1, 1976 to July 1, 1978.

<u>COMPREHENSIVE GENERAL LIABILITY (CGL) POLICY:</u>

We have examined CGL effective July 1, 1970 to July 1, 1979. The policies contain the following language.

Part I        COVERAGE A - BODILY INJURY LIABILITY

               COVERAGE B - PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

               Coverage A. bodily injury or

               Coverage B. property damage

to which this insurance applies, caused by an occurrence,...

Part VI - DEFINITIONS

    "occurrence" means an accident, including injurious exposure to conditions, which results during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

    "property damage" means injury to or destruction of tangible property.

XXXIII-262

PRIVILEGED AND CONFIDENTIAL B&D MA        LM        0037698

Page 3
November 6, 1995

The CGL policies effective July 1, 1970 to July 1, 1973 contain the following exclusion endorsement.

**EXCLUSION  (Contamination or Pollution)**

It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

This endorsement does not apply to operations or occurrences in the following states:

Maryland
New Hampshire
North Carolina
Vermont

The CGL policies effective July 1, 1973 to July 1, 1979 contain the following exclusion.

Part I - Exclusions

This policy does not apply:

(f)     to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but exclusion does not apply if such discharge, dispersal, release or escape, is sudden and accidental;

Part VII, CONDITIONS

4.      Insured's Duties in the Event of Occurrence, Claim or Suit

(a)     In the event of an occurrence, written notice...shall be given by or for the insured to the company...as soon as practicable....

(b)     If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c)     The insured shall cooperate with the company,... The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

UMBRELLA EXCESS LIABILITY (UEL) POLICIES:

XXXIII-263

PRIVILEGED AND CONFIDENTIAL B&D MA     LM     0037699

Page 4
November 6, 1995

The UEL policies, with minor variations, contain substantia.., .ne same language as the CGL policies.

## APPLICATION OF THE POLICY:

It is our position that the pollution exclusion contained in the policies issued to Black & Decker precludes coverage for all damages alleged in the above-referenced complaint, since the damage complained of is not alleged to have been caused by the discharge, dispersal, release, or escape of pollutants which was sudden and accidental.   Further, our investigation reveals that any discharge of pollutants occurred gradually, and as a routine part of the operations at the Huth Oil site.  Such discharges were not "sudden and accidental."  Consequently, Liberty Mutual will not reimburse Black & Decker either with respect to any payment made in settlement of the above complaint, or in satisfaction of any judgment, or with respect to any defense costs Black & Decker incurs in connection with this action.

In addition to the foregoing basis for denial, we also take this opportunity to alert you to additional policy terms, conditions and exclusions which would operate to limit and/or bar coverage  for  losses incurred in connection with the above-referenced claim.

> There is no coverage under the Liberty Mutual policies for costs incurred to respond, to and/or remediate contamination regardless of whether such costs were incurred by a governmental entity or others, as said costs are equitable in nature and do not constitute legal damages.  Nor is there coverage for costs incurred by Black & Decker to comply with statutes and regulations governing its business operations.

> There is no coverage under the Liberty Mutual policies for otherwise covered "property damage" which did not occur during Liberty Mutual's discrete period of coverage.

> To the extent that the alleged damage does not constitute  "property damage," as that term is defined in the policies, there is no coverage thereunder.

> There is no coverage under the Liberty Mutual policies for otherwise covered property damage which was not caused by an occurrence, within the meaning of the policies.

> To the extent that Black & Decker failed to timely notify Liberty Mutual of an occurrence likely to involve its policies, and/or any suit or claim against Black & Decker, or otherwise failed to comply with all terms, conditions, and other prerequisites to coverage under the Liberty Mutual policies, coverage under the policies is hereby precluded.  In this regard, we note that your letter of August 16, 1994,  represents Liberty Mutual's first notice of the claim in this matter.  However, Black & Decker knew of this loss  in March 1994 or earlier, as it appeared on the PRP list of tier assignments for site settlement purposes at that time. It is Liberty Mutual's position that such delay constitutes a breach of the notice provisions of the policies.

XXXIII-264

PRIVILEGED AND CONFIDENTIAL  B&D MA     LM      0037700

Page 5
November 6, 1995

To the extent that Black & Decker has incurred costs and expenses or assumed other obligations in connection with this litigation without the notice to or the consent of Liberty Mutual, or otherwise failed to cooperate with Liberty Mutual in the investigation of this matter, there is no coverage under the Liberty Mutual policies.

While we have tried to identify and address above, all of the coverage considerations that we feel are related to this claim, the foregoing specificity is not intended, nor should it be construed as a waiver of any right or basis which Liberty Mutual may have to further disclaim coverage, and Liberty Mutual expressly reserves all rights in this regard under applicable law and all policies of insurance issued to Black & Decker.

Very truly yours,
LIBERTY MUTUAL INSURANCE COMPANY

Kim A. Olson
Sr. Environmental Claims Specialist

XXXIII-265

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0037701